Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

_____ Division

FILED BY _____ D.C.

Susn Shora-Inurr

AUG 12 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

|  |  |
|---|---|
| DARREN SAUNDERS<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint.*<br>*If the names of all the plaintiffs cannot fit in the space above,*<br>*please write "see attached" in the space and attach an additional*<br>*page with the full list of names.)*<br><br>-v-<br><br>"SEE ATTACHED"<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the*<br>*names of all the defendants cannot fit in the space above, please*<br>*write "see attached" in the space and attach an additional page*<br>*with the full list of names.)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☑Yes ☐No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | DARREN SAUNDERS |
| Street Address | 19001 N.W. 24TH AVE |
| City and County | MIAMI GARDENS (MIAMI-DADE) COUNTY |
| State and Zip Code | FLORIDA   33056 |
| Telephone Number | (786) 259-2219 |
| E-mail Address | DASPROMARK@YAHOO.COM |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

EMPLOYMENT DISCRIMNATION COMPLAINT FOR

PRO SE LITIGANTS IN ACTIONS FILED UNDER

42 U.S.C. 2000e, et seq., (Title VII of the Civil Rights Act)

29 U.S.C & 621, et seq., (Age Discrimination in Employment Act): or

42 U.S.C. &12112, et seq (Americans with Disabilities ACT)

DARREN ANDRE' SAUNDERS

 (plaintiff)

 -V-

Fountainebleau Development, LLC d/b/a

The Big Easy Casino ,

Jeffery Soffer (Owner)

Brad Dunlap (Senior Director)

Clinton Fogarty (Security Director)

Brian Lewis (Security Manager)

Tammy McArthur (Security Manager)

PMA Insurance Company (Employer/Carrier)

Erica Lassiter (Adjuster) and Total Orthopedic Care

Dr. Michael Feanny (Orthopedic doctor

Debra Bilodeau, (Chief Executive Officer)

   **Jury Trial Requested? YES**

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | THE BIG EASY CASINO |
| Street Address | 931 FEDERAL HIGHWAY |
| City and County | HALLANDALE BEACH (BROWARD) COUNTY |
| State and Zip Code | FLORIDA 33009 |
| Telephone Number | (954) 924-3200 |

**II.    Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Other federal law *(specify the federal law)*:

TITLE XXXI (LABOR) CHAPTER 440 WORKER'S COMPENSATION 440.205 Coercion of Employee

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: RIGHT TO SUE (NOTICE)

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

C.   I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race _____
- ☑ color _____
- ☑ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☑ age *(year of birth)*  1970  *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

  WORKER'S COMP RETALIATIONS AND HARASSMENT

E.   The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

    Name                               " SEE ATTACHED

    Job or Title (if known)

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address (if known)

Defendant No. 2

    Name

    Job or Title (if known)

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address (if known)

Defendant No. 3

    Name

    Job or Title (if known)

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address (if known)

Defendant No. 4

    Name

    Job or Title (if known)

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address (if known)

## I.    PARTIES TO THIS COMPLAINT

A. Plaintiff

Darren Saunders
19001 N.W. 24th Avenue
Miami Gardens Miami Dade County
Florida, 33056
(786) 259-2219
(786) 868-7975
Email:daspromark@yahoo.com

B. The Defendant(s)

Defendant No. 1
Fountainebleau Development, LLC d/b/a
The Big Easy Casino
Jeffery Soffer (owner)
831 N Federal Hwy, Broward County
Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 2
Fountainebleau Development, LLC d/b/a
The Big Easy Casino

Brad Dunlap (Senior Director)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 3
Fountainebleau Development, LLC d/b/a
The Big Easy Casino

Clinton Fogarty (Security Director)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 4
Fountainebleau Development, LLC d/b/a
The Big Easy Casino
Brian Lewis (Security Manager)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com
Defendant No. 5
Fountainebleau Development, LLC d/b/a
The Big Easy Casino

Tammy McArthur (Security Manager)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 6

PMA Insurance Company (Employer/Carrier)

Erica Lassiter (Adjuster)

380 Sentry Parkway, P.O. Box 3031,

Blue Bell, PA 19422 ·

800.222.2749

customer_service@pmagroup.com

Defendant No. 7

Total Orthopedic Care

Debra Bilodeau, (Chief Executive Officer)

10794 Pines Blvd Suite 102-104, Broward County

Pembroke Pines, FL 33026

(954) 735-3535

(dbilodeau@toc.md)


Defendant No. 8

Total Orthopedic Care

Dr. Michael Feanny (Orthopedic doctor)

10794 Pines Blvd Suite 102-104, Broward County

Pembroke Pines, FL 33026

(954) 735-3535

workerscomp@toc.md


**II.    BASIS FOR JURIDICTION**

This case is brought up for discrimination in employment pursuant to:
(Check all That apply)

**X** Title VII of the Civil Rights Act of 1964, as codified by, 42 U.S.C. 2000e- 2000e-17 (race, color, gender, religion, national origin) (Note: to bring a federal lawsuit under Title VII, you must first obtain a Notice of Right to Sue Lawsuit under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)

**X** Age Discrimination in Employment ACT of 1967, as codified, 29 U.S.C. & 621 to & 634.

## INTRODUCTION

Here cometh <u>Darren Andre Saunders,</u> 54 years old, (African male)  Saunders is a public figure, business owner, community activist, motivational speaker, and content creator, with leadership characteristics.   His trustworthy professionalism and job performance is demonstrated by his job portfolio highlighting his past positions in management.  Saunders skill level and job experience allowed him to have positions in community relations, loss prevention, and security supervision details.

## COMPLAINT

Plaintiff Darren Saunders, is an African American male is protected from discrimination in Florida under state and federal law regarding medical treatment, with race and color being federally protected characteristics.  Under the Affordable Care Act and the Americans with Disabilities Act (ADA), along with Florida's own anti-discrimination laws, plaintiff feels his employer and their affiliates discriminated against the plaintiff based on race, disabilities, and other protected characteristics in healthcare settings.

Florida law protects employees from retaliation by employers for filing or attempting to file a workers' compensation claim.  Plaintiff  Darren Saunders is protected under **Florida Civil Rights Act (FCRA) which** makes it unlawful for employers to discriminate against employees because of their race.  Plaintiff claims his employer The Big Easy Casino and it's affiliates have violated the plaintiff rights under **Title VII of the Civil Rights Act,** which protects against employment discrimination based on race, color, religion, sex, and national origin.

Plaintiff Darren Saunders is still employed with the Big Easy Casino (employer) as a security supervisor with worker's comp restrictions.  The plaintiff has filed a complaint to the EEOC for unlawful civil rights violations involving worker's comp retaliation, harassment, and defamation of character with (slander/libel), after filing a worker's compensation claim.

 Plaintiff Darren Saunders would then receive a Notice for the Right to Sue after suffering a work-related personal injury due to unlawful frauds committed by the employer management agents Brad Dunlap (acting as both Security

Director/Surveillance Director), Clinton Fogarty (NEW Security Director), Briand Lewis (Security Manager) and Tammy McArthur (Security Manager).

Under Florida Statute Section 440.205, employers are prohibited from terminating, threatening, intimidating, or coercing employees in retaliation for pursuing their rights under the workers' compensation system. These protections apply whether the claim is approved, denied, or even if retaliation prevents the filing of a claim.

| **Title XXXI** | **Chapter 440** | **View Entire Chapter** |
|---|---|---|
| LABOR | WORKERS' COMPENSATION | |

**440.205   Coercion of employees.** —No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

**History.**—s. 17, ch. 79-40; s. 43, ch. 89-289; s. 56, ch. 90-201; s. 52, ch. 91-1.

## I.   PARTIES TO THIS COMPLAINT

A. Plaintiff

Darren Saunders
19001 N.W. 24th Avenue
Miami Gardens Miami Dade County
Florida, 33056
(786) 259-2219
(786) 868-7975
Email:daspromark@yahoo.com

B. The Defendant(s)

Defendant No. 1
Fountainebleau Development, LLC d/b/a
The Big Easy Casino
Jeffery Soffer (owner)
831 N Federal Hwy, Broward County
Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 2

## I.    PARTIES TO THIS COMPLAINT

A.  Plaintiff

Darren Saunders
19001 N.W. 24th Avenue
Miami Gardens Miami Dade County
Florida, 33056
(786) 259-2219
(786) 868-7975
Email:daspromark@yahoo.com

B.  The Defendant(s)

Defendant No. 1
Fountainebleau Development, LLC d/b/a
The Big Easy Casino
Jeffery Soffer (owner)
831 N Federal Hwy, Broward County
Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 2
Fountainebleau Development, LLC d/b/a
The Big Easy Casino

Brad Dunlap (Senior Director)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 3
Fountainebleau Development, LLC d/b/a
The Big Easy Casino

Clinton Fogarty (Security Director)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 4
Fountainebleau Development, LLC d/b/a
The Big Easy Casino
Brian Lewis (Security Manager)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com
Defendant No. 5
Fountainebleau Development, LLC d/b/a
The Big Easy Casino

Tammy McArthur (Security Manager)

831 N Federal Hwy, Broward County

Hallandale Beach, FL 33009
(954) 924-3200
info@thebigeasycasino.com

Defendant No. 6

PMA Insurance Company (Employer/Carrier)

Erica Lassiter (Adjuster)

380 Sentry Parkway, P.O. Box 3031,

Blue Bell, PA 19422 ·

800.222.2749

customer_service@pmagroup.com

Defendant No. 7

Total Orthopedic Care

Debra Bilodeau, (Chief Executive Officer)

10794 Pines Blvd Suite 102-104, Broward County

Pembroke Pines, FL 33026

(954) 735-3535

(dbilodeau@toc.md)

Defendant No. 8

Total Orthopedic Care

Dr. Michael Feanny (Orthopedic doctor)

10794 Pines Blvd Suite 102-104, Broward County

Pembroke Pines, FL 33026

(954) 735-3535

workerscomp@toc.md

**II.    BASIS FOR JURIDICTION**

This case is brought up for discrimination in employment pursuant to:
(Check all That apply)

**X** Title VII of the Civil Rights Act of 1964, as codified by, 42 U.S.C. 2000e- 2000e-17 (race, color, gender, religion, national origin) (Note: to bring a federal lawsuit under Title VII, you must first obtain a Notice of Right to Sue Lawsuit under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)

**X** Age Discrimination in Employment ACT of 1967, as codified, 29 U.S.C. & 621 to & 634.

**X** Americans with Disabilities Act of 1990 [A.D.A.}, as codified 42 U.S.C. & 12112 to 12117

### III.   STATEMENT OF CLAIM (recently to past)

1. On August 11, 2025, through email, plaintiff submits a complaint through email to the HR department regarding Security Manager Brian Lewis, fraudulent written statement in an incident report stating, "…plaintiff Darren Saunders did not detail why he was having back pains after reporting a medical incident!"  (That's a fraud, as plaintiff Saunders assisted a older black male guest on Wednesday 8/06/2025 who was having a stroke, but plaintiff injured his back in the process, but gave Security Manager Brian Lewis the employee first report of injury form and the decline of medical transport form, detailing the plaintiff's medical incident.

2. On Friday May 16, 2025, medical visit with Doctor Michael Feanny, I told him I'm still having striking pains in the areas of the PRP injections shot of my left knee and left arm, as he shows little concern.  I showed Doctor Michael Feanny photos of my left ankle and my left foot, plus took my shoe off, showing him the swelling of my left foot/ankle area suggesting nerve damage, requesting a neurologist, but Doctor Michael Feanny stated; it was a skin issue suggesting me to see a dermatologist rather than a neurologist.  The medical visit ended with him checking my balance not putting me on (MMI), asking me if I'm using a knee brace while still on crutches, then he wrote a updated light-duty restrictions, but did not extend physical therapy, telling me to continue home exercises.

3. On July 7th, plaintiff would ask HR Vice-President Robert Maidment for physical therapy after injuring himself, while at his employer's place of business, stepping on unforeseen flooring hazards during a money escort the day before.

4. On July 7th, through email plaintiff would Whistle Blow the details of previous work-related incident on March 2, 2024, which involved a casino money room key which was accidentally thrown in the employer's trash compactor.  The plaintiff described in his July 7th, 2024 email, his knee buckled after entering the trash compactor stumbling over trash bags with the feeling of his knee popping out of place like an adjustment would feel.

5. The details of March 2, 2024, trash compactor money room key incident report was not well received by casino executives who knew nothing about the incident as the plaintiff's retaliation would then start after the investigation got on the way.

6. On 07/29/2024 @ 3:00pm, During the Q&A investigating meeting, the plaintiff outlined to the casino executives, the harsh details of March 2, 2024, as Brad Dunlap (Security Director/Surveillance Director) was being cruel to the Security manager Tammy McArthur

using coercion to make her think her job was on the line, if the casino money room key was not found. Manager Tammy McArthur returned to work emotionally upset, in jeans, and boots; to find the casino money key she accidentally tossed in the office trash can, due to her job being on the line.

7. At that point, the executive basically stated that my report is not accurate according to the acting Security Director/Surveillance Director Brad Dunlap, due to his fraud and intimidations to Security Manager Tammy McArthur.

8. Plaintiff details exposed the employer negligence in the claimants' work-related injury, by not operating the casino to the standards of the Florida Gaming Commission. (The Florida Gaming Commission which requires the security department and the surveillance department to operate independently of each other).

9. The employer's negligence was clear by having one individual being Brad Dunlap, who was not knowledgeable to be an overseer of both department duties of security director and surveillance director. This failure to operate the casino to the standards of the FGCC was one of the factors related to the plaintiff's work-related injury as it was the employer negligence, entrusting two important staff director's positions, to be handled by one person.

10. After the investigation was conducted, the claimant was retaliated against by acting security director/surveillance director Brad Dunlap. Claimant was subjected to a hostile work environment with illegal fraud, retaliation, harassment, defamation of character with (slander/libel).

11. Plaintiff's workers comp benefits were reported late and a medical malpractice, almost resulting in death.

12. The claimant would obtain a workers compensation attorney and file a complaint to the EEOC.

After the review of claimant's claims, On the date of 5/14/2025, the EEOC would inform claimant. of his "Right to Sue" for workers compensation retaliation under Florida's statue.

.

## Plaintiff's List of Evidence:

1. (Photo Evidence) – Plaintiff's work-related injury happened due to hazardous flooring issues.
2. On 05/14/2025 issued Plaintiff's (Notice of Right to Sue)
3. On 05/12/2025 (EEOC Charge of Discrimination) Plaintifiss's document reporting on retaliation discrimination.
4. (Employer's Handbook) – Plaintiff refers to the employer's handbook regarding Section 2.3 No Harassment (discrimination, verbal insults, and retaliations)
5. (Employer's Handbook)- Plaintiff refers to Section 10.1 "Codes of Business Conduct & Ethics".
6. Signed Big easy Documents for The Big Easy Casino Security Department "CODE OF ETHICS"
7. (Employer's Handbook) Plaintiff's refers to "Supervisory Duties/Expectations:
8. On 07/29/2024 @3:00pm Plaintiff's executive Q&A meeting investigating Trash Compactor involving missing money room key never reported by Security Director/Surveillance Director Brad Dunlap.  The meeting was conducted with the Plaintiff Darren Saunders, Casino Executives Assistant Jane Cassidy, and HR Vice-president Robert Maidment.
9. Email sent  August 07, 2024, Security  Director/Surveillance Director Brad Dunlap, submits corresponding email contradicting plaintiff's claims, "…if I was notified…?" (the acting Security Director/Surveillance Director claims he had **NO** knowledge of a missing casino money room key thrown in the trash.
10. Plaintiff's documents retaliation from Security Director/Surveillance Director Brad Dunlap due to being on worker's compensation.
11. (On October 1, 2024) Plaintiff's documents unlawful retaliation from NEW Security Director Clinton Fogarty due to being on worker's compensation by altering plaintiff assault incident report because plaintiff was supposed to be on light duty accommodations.
12. Plaintiff's documents illegal fraud and unlawful retaliation from NEW Security Director Clinton Fogarty regarding promotion as plaintiff  makes complaint in a email to HR. (Dated_____).  Plaintiff was told a fraud by NEW Security Director, HR failed to promote, but HR contradicts the Security director instructing Clinton Fogarty to tell the truth about the portion decision.  Plaint was devasted and mentally stressed by the truth seeks punitive damages.
13. Plaintiff's (Dated _____) documents retaliation and harassment from Security Manager Brian Lewis due to plaintiff being on worker's comp light duty.
14. Plaintiff has filed worker's complaints for delayed payments by the employer's insurer PMA Companies.

.

## Plaintiff's List of Evidence:

1. (Photo Evidence) – Plaintiff's work-related injury happened due to hazardous flooring issues.
2. On 05/14/2025 issued Plaintiff's (Notice of Right to Sue)
3. On 05/12/2025 (EEOC Charge of Discrimination) Plaintifiss's document reporting on retaliation discrimination.
4. (Employer's Handbook) – Plaintiff refers to the employer's handbook regarding Section 2.3 No Harassment (discrimination, verbal insults, and retaliations)
5. (Employer's Handbook)- Plaintiff refers to Section 10.1 "Codes of Business Conduct & Ethics".
6. Signed Big easy Documents for The Big Easy Casino Security Department "CODE OF ETHICS"
7. (Employer's Handbook) Plaintiff's refers to "Supervisory Duties/Expectations:
8. On 07/29/2024 @3:00pm Plaintiff's executive Q&A meeting investigating Trash Compactor involving missing money room key never reported by Security Director/Surveillance Director Brad Dunlap.  The meeting was conducted with the Plaintiff Darren Saunders, Casino Executives Assistant Jane Cassidy, and HR Vice-president Robert Maidment.
9. Email sent  August 07, 2024, Security  Director/Surveillance Director Brad Dunlap, submits corresponding email contradicting plaintiff's claims, "…if I was notified…?"  (the acting Security Director/Surveillance Director claims he had **NO** knowledge of a missing casino money room key thrown in the trash.
10. Plaintiff's documents retaliation from Security Director/Surveillance Director Brad Dunlap due to being on worker's compensation.
11. (On October 1, 2024) Plaintiff's documents unlawful retaliation from NEW Security Director Clinton Fogarty due to being on worker's compensation by altering plaintiff assault incident report because plaintiff was supposed to be on light duty accommodations.
12. Plaintiff's documents illegal fraud and unlawful retaliation from NEW Security Director Clinton Fogarty regarding promotion as plaintiff  makes complaint in a



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/14/2025

**To:** Darren Saunders
19001 N.W. 24th ave
MIAMI GARDENS, FL 33056
Charge No: 510-2025-01888

EEOC Representative and email:     ROBERT TOM
Federal Investigator
robert.tom@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 510-2025-01888.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
05/14/2025
Evangeline Hawthorne
Director

EEOC No. 510-2025-01888 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 510-2025-01888 |
| Florida Commission On Human Relations | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Darren Saunders

Phone No.:        786-259-2219
Year of Birth:     1970
Mailing Address: 19001 N.W. 24th ave
MIAMI GARDENS, FL 33056

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: The Big Easy Casino
No. Employees, Members:
Phone No.:
Mailing Address: 831 N FEDERAL HWY
HALLANDALE, FL 33009, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Disability, Race

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 03/01/2024
Latest: 05/09/2025
Continuing Action

THE PARTICULARS ARE:

I am an individual who sustained a workplace injury while employed by the above named respondent, resulting in a workers' compensation claim.

As a Security Supervisor under the supervision of Clinton Fogarty and Surveillance Director/Security Director Brad Dunlap, I'm submitting this claim for past and recent events.

In or around March 2024, an incident occurred involving the loss of an important casino money room key, in which my co-worker, Security Manager Tammy McArthur, under the coercion of Brad Dunlap, was made to think her job was on the line, and she had to search inside the trash compactor to retrieve the key for her job's future.

 I assisted in this search, where I injured my left knee. This was the first of several work-related incidents related to my knee injury.

2.1

EEOC No. 510-2025-01888 | FEPA No.

Subsequently, in or around July 2024, my knee was further aggravated due to the respondents flooring resulting in a workers compensation report. This incident was reported to HR management, who were unaware of my initial injury in the trash compactor in March 2024, because there was no report filed.

During an internal investigation of both reported work related incidents, it was discovered Surveillance Director/Security Director Brad Dunlap did not make an incident report about the loss key incident to casino executives. Brad Dunlap was negligent in his duty to properly supervise the situation and then provided false statements causing harm to my credibility. I had to show a cell phone text to investigators, showing he knew what was going on, but failed to respond.

After the March 2024, the trash compactor incident was kept under confidential circumstances, with no incident report filed or reported.

As a result of me going in the trash compactor rather than Tammy McArthur, I believe it caused another personal dislike against me as I would then have to file a work harassment complaint to HR against Brad Dunlap for creating a hostile work environment.

During the internal investigation in July 2024, Brad Dunlap and Tammy Mcarthur, submitted untruthful statements to investigators to make me look like I was overzealous to find the key, but did not report the effort to find the casino key was done as a team. Surveillance footage was study on the trash compactor incident, where we first used sticks with hooks, but efforts were unsuccessful, then the decision was made to enter the trash compactor. When Tammy McArthur returned back to work wearing Jean, gloves, and a sweatshirt, to search the trash that when it be became a serious situation.

This was never included in the internal investigation details submitted to the executives during the July 2024 investigation, as Brad Dunlap and Tammy McArthur tried to make me look bad, with HR Robert Maidment telling me, my report was not accurate after giving a sworn affidavit.

This undisclosed information was only disclosed during my internal investigation of the incident in July 2024. I would disclose to the executives while under oath, maintenance co-worker Taravres Powell also went into the trash compactor assisting in the efforts to find the casino key. (Maintenance worker Tavareves Powell, would cut the power to the trash compactor and held the ladder when I went into the trash compactor, but unfortunately, he was laid off by the employer)

The final incident took place in or around October 2024, when I was physically assaulted by a casino patron while on so-called worker's comp (light-duty), which further injured my already compromised knee. The employer considered my normal duties as worker's comp light-duty, as I got assaulted and injured, supervising the casino by myself. A police report was filed with the Hallandale Beach police department on the incident.

Security Manager Mr. Clinton Fogarty witnessed the trash compactor incident in March 2024, confirming my claim about the incident becoming the new Security Director shortly afterwards, but failed to fully support me, with a Security Manager promotion, replacing his vacant position.

New Security Manager Clinton Fogarty, tried to blame Human Resource department for me not getting the promotion, but it was debunked by HR Robert Maidment, who instructed Clinton Forgarty to have a meeting with me to clear up the bad performance review, given to me. Human Resources interviewer Vicky during the interview for the security manager position, stated I was the top candidate out of the six applicants. So, what happened?

Instead, Clinton Fogarty motives were questionable against me by altering my assault incident report in October 2024, submitting a false report that misrepresented the events of the assault not in favor of the respondent injury while on light-duty. This altered incident report, painted me in a negative light for the legal depositions for unreported work-related injuries submitted in my worker's comp case.

I have experienced a hostile and toxic work environment. I have been subjected to questionable events of retaliation which has hindered my eligibility for promotions improving my wages. I'd disagreed with Security Manager Brian Lewis, for giving me the performance evaluations to sign without reading it first, which infuriated me causing me to no sign the document to only to have them corrected after filing a complaint.

Furthermore, legal action has been initiated by the respondent attorney to include a deposition instigated by the respondent attorney containing false statements intended to

Discredit my injury claims. HR Director Robert Maidment has been informed of my situation but has failed to address my concerns of unlawful false statements made against me causing me mental harm and personal harm for defamation of character through (slander/libel). I have remained in my current position as security supervisor.

Consequently, I have been forced to work in a toxic work environment while on workers comp (light-duty), as I'm currently using crutches. I'm reporting further issues of discrimination while on worker's comp involving failure to provide prompt medical information prior to medical procedures and delayed worker's comp payments. Because of lack of proper medical instructions, I may have suffered nerve damage from a PRP injection shot in my knee. I feel due to my race as an older Black

2,3

male and my current disabled status, I have encountered discriminatory personal harm after my superiors made several false statements against me.  I have the right to work in a safe environment with reasonable accommodations (necessary for my knee surgery recovery) and free from acts of unlawful discrimination.

In addition, I feel because of my ethnicity, my medical treatment was unethical and discriminatory due to me not receiving timely medical pre-op and post procedures instructions before two medical procedures. I could have died having knee surgery with a blood sugar count of 311 on 12/19/2024, then I was given a PRP (platelet -rich plasma) injection shot on 04/07/2025 shot, without being provided the proper medical instructions needed two weeks, before the injection. I needed to be hydrated before the PRP injection shot to help with my veins, but I never received the premedical instructions, so now I may have nerve damage due to the injection. They treated me like a "lab-rat", just to collect a worker's comp procedure check, then sending back to work for light-duty in pain, because the employer wanted me back to work, while on crutches, with visible medical issues.

In final, I believe these negative employment actions made against me was due to filing a workplace injury claim.

I believe I have been discriminated and retaliated against because of my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADAAA). I believe that I have been discriminated, and retaliated against because of my race Black, in violation of Title VII of the Civil Rights Act of 1964, as amended and all applicable state statutes


2.4

EEOC No. 510-2025-01888 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.


Digitally Signed By: Darren Saunders
05/12/2025
_____
Charging Party Signature & Date



If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.


I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.


_____
Notarized Signature of Charging Party


Subscribed and sworn to before me this date:




Signature of Notary_____
Printed Name _____

3,



3.1



3.2







3,4



3.5



36



3.7



# Total Orthopaedic Care

M.A. Hajianpour, M.D.
Michael Feanny, M.D.
Babak Sheikh, M.D.
Mario Berkowitz, M.D.



**Your orthopeadist has prescribed an injection of platelet rich plasma, or PRP for your condition.**

## Pre-procedure Planning

❖ **14 days prior to injection, you must stop taking all aspirin-like medication such as Motrin, Aleve, or Advil and 14 days after**

❖ **You may use Tylenol before or after the procedure.**

❖ **You must drink plenty of fluids such as water, Gatorade, or Propel starting a few days before the procedure, especially the day before and morning of the injection.**

❖ **You may eat and drink as normal.**

❖ **It is vital that you are well hydrated!**

It is expected that it may take up to 6-8 weeks to adequately assess your response to the PRP therapy.

Every condition is different and every patient responds differently to PRP.

More than one PRP treatment may be needed for full efficacy.

4,



Date April 21st, 2025

Claim No. W004377417

**Employee address (if mailed)**

19001 N.W. 24TH AVE

MIAMI, FL 33056

Employee Name Darren Saunders

Date of Injury 03/02/2024

**Dear Darren Saunders:**

Your physician, Dr. Michael Feanny, M.D. has released you for modified work with the following restrictions (or see attached medical form):

The employee is restricted from kneeling and squatting, and is limited to walking no more than 15 minutes at each occasion.

We do have light duty work available that accommodates your current restrictions as outlined by your doctor. This will be periodically evaluated to ensure it continues to meet your needs.

We ask that you report for work on April 23rd, 2025.

Please report to Security Office at 4pm.

*If you receive this letter after the report-to-work date listed above, you will have 24 hours to contact:*

*Robert Maidment at rmaidment@thebigeasycasino.com.*

*Failure to report to work could affect your entitlement to temporary disability benefits.*

We look forward to seeing you and wish you a speedy recovery.

Sincerely,

Antoine Wright, Human Resources Manager                04/21/2025

You will be receiving $ 20.25 per hour. If this is less than your regular earnings, you may be entitled to wage loss benefits from your workers' compensation carrier.

*I have read and understand the above information.*

_____          _____  04/21/2025  _____

Employee Signature/Date                              Employer Signature/Date

**Please bring this form with you when you report to work.**

5.

## Big Easy Casino Security Department
### CODE OF ETHICS

The following "CODE OF ETHICS" has been adopted as a guide to the moral responsibilities of the Security Department. In recognition of the significant contribution of the private security to crime prevention and the reduction, the protection of property and providing for the safety and welfare of our patrons, as a security officer, I pledge:

To accept the responsibilities and fulfill the obligations of my role: protecting life and property, preventing and reducing crimes against my employer's business, upholding the law and respecting the constitutional rights of all persons.

- To conduct myself with honesty and integrity and to adhere to the highest moral principles in the performance of my security duties.
- To be faithful and dependable in discharging my duties to uphold the laws, policies and procedures that protects the rights of others.
- To observe the precepts of truth without allowing personal feelings, prejudices or friendships to influence my judgment.
- **To immediately report to my Supervisors, without hesitation, any violations of the law or of my Employers regulations. This includes any suspicious behavior you may observe or anything you may have heard from a guest or employee of Big Easy Casino which you perceive as being suspicious, out of the ordinary, or anything which may lead you to believe that the safety of persons and/or property may be jeopardized.**
- To respect and protect the confidential and privileged information of my employer beyond the term of my employment, except where their interests are contrary to law or to this Code of Ethics.
- To cooperate with all recognized and responsible law enforcement and government Agencies in matters within their jurisdiction.
- Never solicit any compensation, commission or gratuity.
- To conduct myself professionally at all times and to perform my duties in a manner that reflects credit upon my employer and me.

To strive continually to improve my performance by seeking training and educational opportunities that will better prepare me for my future with the Company.

I have read the above policy which was adapted by the Big Easy Casino Security Department and agree to abide by all contents listed within said policy regarding the departmental Code of Ethics. Failure to adhere to the above listed Code of Ethics may result in disciplinary action up to and including termination of my employment.

_DARREN ANDRE SAUNDERS_
Print Name

_11/05/2020_
Date

_Signature_

Mardi Gras Gaming

5.1

## Supervisory Duties/Expectations

Supervisors have been selected based on several criteria which include overall knowledge of casino operations, security plan, departmental standard operating procedures, emergency action plan, report writing skills and leadership ability.

The supervisory staff is expected to lead by example and is closely watched by those who are under his/her command. With that being said, supervisors are to adhere to any and all policies and procedures contained within the departmental manual. With the limited number of supervisors assigned to each shift and the amount of responsibilities which come with the position, it becomes imperative that we follow and adhere to policies and procedures. The following shall serve as examples of what is expected from the security supervisory staff:

General Conduct:
1) No congregating between supervisors on any floor. If one supervisor is busy with a call or writing a report, the other should be supervising the on duty security officers.
2) Since there are only 2 supervisors on duty at most times, avoid scheduling your meal breaks at the same time. At least 1 supervisor must be readily available for call at all times unless both are busy handling separate dispatched calls.
3) Be on time in order to prepare for the start of your respective shift.
4) Have a good working knowledge of the security plan, emergency action plan, and the departmental standard operating procedures.
5) Make good, sound decisions.
6) Issue disciplinary action when necessary
7) Correct violations of policies/procedures at the time they are observed. Take immediate action (ie Disciplinary Action)
8) If you do not know the answer, or you are unsure of how to deal with a specific situation, ask someone who knows. Do not guess.
9) Share information with the on-coming shift.
10) Do not offer information to personnel from other departments which could be classified as confidential. (i.e.; suspended and/or terminated employees, employees who are under active investigation, violations of state, facility, and or departmental policies etc...).
11) Do not talk down to your personnel. Treat fellow employees in the manner you wish to be treated.
12) Be fair. Showing favoritism will not be tolerated.
13) Do not utilize your cell phone when on the floor unless it is work related.
14) Avoid loitering around the main receptionist's podium.
15) Any and all other responsibilities which come with the position will be handled in a professional manner.
16) Improper usage of the Internet is strictly prohibited

09/28/11, 09/18/12

7

5.2

This Code of Business Conduct and Ethics (the "Code") addresses The Big Easy Casino's commitment to the honesty, integrity, and ethical behavior of the Company's Team Members, officers, and directors. These qualities are essential to the Company's reputation and success. This Code governs the actions and working relationships of the Company's Team Members, executives, and directors with current and potential customers, consumers, fellow Team Members, competitors, government and self-regulatory agencies, investors, the public, the media, and anyone else with whom the Company has or may have contact. Each member of management of the Company has the added responsibility of setting an example by his or her personal performance, which should convey the Company's commitment to the highest ethical values. If you are uncertain of your actions or the actions of Team Members or third parties, you are encouraged to take advantage of the Company's open door and informal environment and raise your concerns with appropriate management personnel in accordance with the "Mandatory Reporting of Violations and Non Retaliation Policy" set forth in the Company's Team Member Handbook.

The Company and each of its Team Members, executives, and directors must conduct their business affairs with the highest quality standard of honesty and integrity. Misconduct cannot be excused because it was directed or requested by another party. In this regard, Team Members are expected to alert the Company in the manner set forth under Section, "Reporting Violations" of this Code or in accordance with the Mandatory Reporting of Violations and Non-Retaliation Policy set forth in the Company's Team Member handbook whenever an illegal, dishonest, fraudulent, or unethical act is discovered or suspected. Team Members will not be penalized for reporting your discoveries or suspicions provided you acted in good faith. Persons who violate the Code will be subject to disciplinary action, which may include termination of employment, regardless of whether or not the conduct violates any applicable law. Periodically, Team Members will be required to review this Code and acknowledge in writing their understanding of and compliance with this Code.

## Section 10.2   Core Principles

- Team Members, executives, and directors shall act with honesty and integrity and shall avoid actual or apparent conflicts of interest between personal and professional relationships and shall disclose to the Nominating and Corporate Governance Committee of the Board of Directors any material transaction or relationship that reasonably could be expected to give rise to such conflict;

- Team Members, executives, and directors shall endeavor to provide information that is full, fair, accurate, timely and understandable in all reports and documents that the Company files with, or submits to, any government entities for any public filings, including the IRS;

- Team Members} executives} and directors shall comply with all laws, rules} and regulations of federal} state} and local governments and applicable private or public regulatory agencies;

- Team Members, executives, and directors shall act in good faith, responsibly, with

58

513

### Section 4.10    Breastfeeding Accommodation

We recognize the needs of new mothers and provide a reasonable unpaid break time for Team Members as needed to express breast milk for their nursing child for up to one year from the child's date of birth, unless a longer time is required under state or local law. We will provide a private space (not a bathroom) that will shield the Team Member from view and will be wholly free from coworker or public intrusion. Team Members should contact the Human Resources department if such need arises.

### Section 5    EXPECTATIONS OF TEAM MEMBERS

### Section 5.1    Code of Conduct

The Company expects Team Members to comply with the following standards and expectations of behavior. Any deviation from these standards may result in disciplinary action up to and including dismissal:

- Excessive unexcused absenteeism and/or tardiness is prohibited. We cannot properly serve our guests, clients, and customers when Team Members do not report to work on time, as scheduled. Absenteeism and tardiness also creates an unnecessary and unfair burden on fellow Team Members.

- Violating conflict of interest rules, the outside employment policy, and/or the confidentiality policy.

- Interfering with the work performance of others.

- Poor performance. Every Team Member is expected to make every effort to learn his or her job and to perform that job at a satisfactory level. Failure to meet the Company's performance expectations may result in corrective action, including but not limited to termination of employment.

- Leaving the workplace with items or property without a property pass signed by a department manager. Any packages, purses, backpacks, or similar parcels or totes leaving the property are subject to inspection. Team Members should not bring unnecessary personal property to the property. Any Team Member leaving the building with any personal and/or property items must have a package pass signed by a department manager.

- Each Team Member is in a position of trust when observing the personal actions of guests. Team Members are expected to uphold every guest's right to privacy. Team Members may not discuss their observations of guest behavior to anyone outside the property. This policy does not prohibit providing truthful information to a valid governmental, law enforcement, or regulatory agency, or where

24

5,4

2. Dishonesty.

3. Theft.

4. Physically or verbally attacking, assaulting, or threatening another person.

5. Sleeping while on duty.

6. Smoking while working and/or in an unauthorized area.

7. Gambling on premises whether on or off duty.

8. Gaming License Revocation or failure to follow licensing requirements.

9. Violation of the No Discrimination, No Harassment, Violence, and Mandatory Reporting of Violations and No Retaliation policies.

10. Deliberate non-performance of work.

11. Violation of the alcohol or drug policy, including refusal to submit to testing for drugs and/or alcohol when instructed to do so by management.

12. Working in an unsafe manner or engaging in activities that are reasonably anticipated to carry a significant risk of harm to others. This includes but is not limited to horseplay and practical jokes.

13. Being in possession of, distribution of, or being under the influence of any controlled substance or alcohol during working hours, or reporting to work in such a condition. This policy does not prohibit Team Members from taking prescribed medications, so long as the substance is legal to be prescribed under federal, state, and local law.

14. The use of obscene or abusive language.

15. Possessing a firearm or other dangerous weapon on property premises or while conducting Company business, including while attending company-sponsored events. This includes visible and concealed weapons, even those for which the owner has obtained the necessary permits. While not all inclusive, this list of weapons includes firearms, knives with blades longer than four inches, any explosive materials, or any other objects that could be used to harass, intimidate, or injure another individual. (For Team Members in Florida and Tennessee, Team Members who possess a valid firearm carry permit may transport and store a firearm or firearm ammunition in their vehicles if (1) the vehicle is parked where it is permitted to be; (2) the firearm or firearm ammunition is kept from ordinary observation when the Team Member is in the vehicle; and (3) the firearm or firearm ammunition is kept from ordinary observation and locked within the trunk, glove box, or interior of the Team Member's vehicle or a container securely affixed to

Ce.

# EXHIBIT A

## (My Original Incident report)

I wanted to submit an example of how the **Big Easy Casino** (employer) redacts my truthful affidavit accounts of incidents defrauding me and defaming my character, by not including all events of the incident when I'm injured.

"THE EMPLOYER ALTERS REPORTS NOT SHOWING ASSAULTS, SO ?"
- WHAT ELES IS ALTERED?

6.1



**The Big Easy Casino**

831 N Federal Hwy, Hallandale Beach, FL 33009
www.thebigeasycasino.com

**Poker guest became violent in the poker room, throwing poker chips at casino staff**

**Author:** Darren Saunders                    **Report Number:** SEC-24-0580

**Start Time:** 10/01/2024 19:15              **End Time:**

**Report Group:** Security Reports            **Report Type:** Incident - Assault

**Note:** Hallandale Beach department was called for a violent disturbed poker patron who threw poker chips at staff and threaten security supervisor, over a poker hand not in his favor.

**Reported:** 10/01/2024 18:03               **Occurred:** 10/01/2024 18:10

**General Location:** 1st Floor               **Secondary Location:** Gaming Floor

**Specific Location:** Poker Room

**Narrative:** On Tuesday October 1, 2024, at approximately 18:02, this writer Security Supervisor Darren Saunders was called to the poker room, to the north entrance security podium by officer Sonja Destine for a poker dispute. This writer would alert surveillance and investigate the incident, at poker table 10 (seats #6 & seat#1). Upon my arrival to poker table 10, poker floor management staff was addressing the poker challenges from seat #6 poker player later identified as Rudy Ortiz (player's club card# 471943) wearing a black cap, maroon t-shirt and black track pants. Ortiz was disputing a poker hand call with the poker player on seat#1 Detrell Lampkin (player's club card#269480). Ortiz refused to listen to Poker Director Jason Miller call and was asked to leave.

Ortiz was not interested in the poker director's call and started slamming the poker chips on the poker table, while also throwing the poker chips at poker staff. Ortiz antics hit the poker dealer Warunee Daenmaneerattana, poker floor supervisor Jorge Villaran, and Poker dicteror Jason Miller. This writer would approach a angered Ortiz and turn his attention away from the poker staff, telling him to leave. This writer would start dialing 911 and intervene with the dispute but was then called a Nigger by Ortiz. That would bring the assistance of other poker guest and poker staff as Ortiz was directed to go outside by this writer. On the way out passing the north security podium, Oritz bumped this writer's on the left shoulder. Poker guests and poker staff would separate Ortiz from this writer moving outside the north poker entrance doors, while this writer was still talking to the police. This writer was speaking with the 911 operator, and it probably angered Ortiz even more.

It's not confirmed if Ortiz was intoxicated but he was on something other than alcohol, which made him extremely violent. This writer was supported by several poker player's who witness and helped with escorting Rudy Ortiz out the north doors, after he called this writer the N-word. Quinten Dunbar, Levy Adams, Joseph Brooker, and several others, all assisted with the extreme hostile guest. Rudy Ortiz has other poker incidents involving his hostile attitude and should be lifetime trespassed from the property. There's nothing further to report at this time.

**A review with surveillance was conducted and the following was observed.**

6.2

At approximately 17:59-18:03 Rudy Ortiz, was observed having a verbal dispute with the poker table staff.

At approximately 18:03-18:07 this writer is observing the incident, standing close by the poker table and Rudy Ortiz, trying to help keep the dispute calm.

At approximately 18:07-18:10, Rudy Ortiz is observed going on a verbal rant, as the situation is observed getting more hostile between Ortiz and Poker Director Jason Miller. Jason Miller request this writer to eject him from the poker table.

At approximately 18:11-18:15, Rudy Ortiz throws more poker chips hitting poker staff, as this writer would step in, shifting Ortiz focus on security. Ortiz was uncontrollable using bad language towards poker staff and this writer. This writer was waving Ortiz to leave the poker table and go outside, or the the police will be called. Ortiz is observed focusing his anger on this writer and walking out the north entrance, bumping this writer on the left shoulder, until he's out the doors walking into the north parking lot. This writer would continued to observe Ortiz until the police showed up, but Ortiz left the property, walking across Pembroke road, until picked up by a ride-share vehicle.

10/03/24

**Employee**

Name: Darren Saunders

Position: Security Supervisor

Department: Security

Employee Num: 1756

**Employee**

Name: Jason Miller

Position: Poker Director

Department: Card Room

Employee Num: 461

**Employee**

Name: Warunee Daenmaneerattanna

Position: Poker Dealer

Department: Card Room

Employee Num: 1719

**Employee**

Name: Jorge Villaran

Position: Poker Dealer

Department: Card Room

Employee Num: 1659

**Employee**

PLAINTIFF WORKS BY HIMSELF FOR WORKER'S COMP (Light-Duty)

AS A CASINO SECURID SUPERVISOR

## The Big Easy Casino
## Security Department
## Charlie Shift Daily Schedule

| Mgr./Supervisor | Call Signs | Tuesday, Oct. 1, 2024 | CALLOUT: Clinton, Darren, Crystal's Cell | |
|---|---|---|---|---|
| Darren Saunders | Uniform 9 | Shift Supervisor | | |
| **Inside Officers** | **4:00 PM** | **Officer Posts** | **8:00 PM** | **BREAK TIMES** |
| Julia Taylor | Charlie 1 | Slot line | Charlie 4 | |
| Nigel Jean | Charlie 2 | Poker Line | Charlie 3 | |
| Sonia Destine | Charlie 3 | North Entrance | Charlie 1 | |
| Kyle Hebda | Charlie 4 | South Entrance | Charlie 2 | |
| **Breakers** | | | | |
| Elivert Dormevil | Charlie 10 | Charlie 1, 2, 3, 4 | Break Start @ 5:30 | |
| **Outside Officers** | | | | |
| John Valle | Victor 1 | North Lot Rover | | Break @6:30 |
| Jean Nelson | Victor 2 | South Lot Rover | | Break @7:00 |

| | |
|---|---|
| **BREAKS MUST BE COMPLETED BEFORE 10:30** | Regular Days Off |
| **Roll Call Training** | Treivon Barnett |
| **NO OUTSIDE FOOD OR BEVERAGES!!!!!** | Jose Torres |
| **CHECK ALL I.D'S!!!!!** | Christian Herrera |
| **ROVERS/BREAKERS PATROL 2ND and 3RD FLOOR** | Troy Wells |
| | Rachel Fecu |

| Legal Information | | PTO |
|---|---|---|
| Legal Age for Slots and Drinking is on or before: | 10/1/2003 | |
| Legal Age for Poker Room is on or before: | 10/1/2006 | |

| Hours of Operation | | Call out |
|---|---|---|
| Casino: Mon.- Thur. 9am - 3am  Fri-Sun open 24 hrs | | Malik Dupree |
| Fri. Sat. Sun. Open 24 hours (starts Fri @ 9am - closes Mon.@ 3am) | | |
| Poker Room : Doors open @ 9:00am; Tables start @ 10:00am | | |

6.4

# EXHIBIT B

## (My Manager's edit of my original Incident report)

I wanted to submit an example of how the **Big Easy Casino** (employer) redacts my truthful affidavit accounts of incidents defrauding me and defaming my character, by not including all events of the incident when I'm injured.   This fraud prolongs company investigations with (Libel and Slander) against me.

65



**The Big Easy Casino**

831 N Federal Hwy, Hallandale Beach, FL 33009
www.thebigeasycasino.com

## Poker guest became violent in the poker room, throwing poker chips at casino staff

| | |
|---|---|
| **Author:** Darren Saunders | **Report Number:** SEC-24-0580 |
| **Start Time:** 10/01/2024 19:15 | **End Time:** |
| **Report Group:** Security Reports | **Report Type:** Patron - Inappropriate Behavior |

**Note:** Hallandale Beach department was called for a violent disturbed poker patron who threw poker chips at staff and threaten security supervisor, over a poker hand not in his favor.

| | |
|---|---|
| **Reported:** 10/01/2024 18:03 | **Occurred:** 10/01/2024 18:10 |
| **General Location:** 1st Floor | **Secondary Location:** Gaming Floor |

**Specific Location:** Poker Room

**Narrative:** On Tuesday, October 1, 2024, at approximately 18:02 hrs., this writer, Security Supervisor Darren Saunders responded to a call at the north entrance security podium by officer Sonia Destine, regarding a poker dispute. Surveillance was notified. This writer noticed a dispute at poker table 10 (seats #6 & seat#1). Upon my arrival to poker table 10, poker floor management staff was addressing an issue with a male patron at seat #6, later identified as Rudy Ortiz (player's club card# 471943). Mr. Ortiz was disputing a poker hand call with the poker player on seat#1, later identified as Detrell Lampkin (player's club card#269480). Mr. Ortiz refused to listen to Poker Director Jason Miller call and was asked to leave.

Ortiz was upset the poker director's call and started slamming the poker chips on the poker table, while also throwing the poker chips at poker staff. Mr. Ortiz' actions caused the poker chips to hit the poker dealer Warunee Daenmaneerattanna, Poker Floor Supervisor Jorge Viliaran, and Poker Director Jason Miller. This writer approached Mr. Ortiz and advised him that he had to leave the Casino. This writer, while dialing 911, was then called a Nigger by Mr. Ortiz. Poker guests and poker staff would separate Ortiz from this writer moving outside the north poker entrance doors, while this writer was still talking to the police. Mr. Ortiz was uncontrollable using bad language towards poker staff and this writer.

Quinten Dunbar, Levy Adams, Joseph Brooker, and several others, all assisted with the extremely hostile guest. There's nothing further to report at this time.

**A review with surveillance was conducted and the following was observed.**

At approximately 17:59 hrs., Rudy Ortiz was observed having a verbal dispute with the poker table staff. At approximately 1807 hrs., Mr. Ortiz is observed going on a verbal rant, as the situation is observed getting more hostile between Ortiz and Poker Director Jason Miller. Jason Miller requested this writer to eject him from the poker table. At approximately 18:11 hrs., Rudy Ortiz throws more poker chips.

**Linked Reports: SUR-24-1511**

## Employee

| | |
|---|---|
| **Name:** Darren Saunders | |
| **Department:** Security | **Position:** Security Supervisor |
| **Employee Num:** 1756 | |

Cov

**Name:** Sonia Destine

**Department:** Security                                      **Position:** Security Officer

**Employee Num:** 1653

## Patron

**Name:** Rudy Ortiz                                          **Alias:**

**Gender:** Male                                             **Eye color:** Black

**Hair color:** Black                                        **Height:** 5'10" Inches

**Weight:** 185 Pounds                                       **DOB:** 06/01/1983 (41)

**Street Address:** 2780 N.E. 183rd ST#502 N. Miami Beach, Fl 33160-2109

**Players Club #:** 471943

 

spsx5ggp.0xv.png   Patron_471943.bm.

## Patron

**Name:** Detrell Lampkin                                    **Alias:**

**Race:** African American                                   **Gender:** Male

**Street Address:** 5295 SW 33RD ST Hollywood, FL

**Players Club #:** 269480



Patron_269480.bm.

6.7



Warunee Daenmaneerattana



O. Outlook

---

**RE: Employee review**

---

**From** Robert Maidment <rmaidment@thebigeasycasino.com>

**Date** Tue 11/19/2024 3:26 PM

**To** Darren Saunders <dsaunders@thebigeasycasino.com>

**Cc** Antoine Wright <AWright@thebigeasycasino.com>

Hi Darren,

Thank you for your patience while I reviewed the concerns outlined in your email regarding your performance review and the recent promotion decision. I want to address both matters thoroughly to ensure clarity and fairness.

**Performance Review**
Firstly, the performance review provided to you on November 18, 2024, was shared incorrectly and had not undergone the necessary HR review or approval. This review was incomplete, missing required comments under competencies rated below standards, overall comments, and goals for the next year. Such omissions are not in line with our performance review standards. If it had been properly routed through HR, these issues would have been identified and corrected before it was shared with you.

To rectify this, Clinton Fogarty will personally deliver the revised review to you, which reflects an accurate assessment of your contributions. Based on our findings, your rating will be adjusted to "Meets Standards."

Just to note: The Employee Signature will show "N/A" since the documents are signed with ink vs digitally. Also, the review is to be given out in November of each year based on your November hire date.

I appreciate the challenges you've faced over the last year, including supporting the team while others were unavailable. Your efforts have not gone unnoticed, and it's clear you've remained dedicated under difficult circumstances.

**Promotion Decision**
Regarding the promotion to Security Shift Manager, Clinton clarified that the decision was based on Ralph's overnight experience and his performance during the interview process. This was not a decision made by HR, and any suggestion otherwise was a misunderstanding.

**Moving Forward**
I regret that these missteps have caused you to feel undervalued, and I want to assure you we are committed to providing a supportive and equitable work environment. Clinton will work with you directly to resolve any lingering concerns and set meaningful goals for 2025.

If you have additional questions or wish to discuss this further, please don't hesitate to reach out. Your dedication and experience are valued, and we want to ensure your concerns are addressed fully.

7.1

Please provide overall comments to describe the employee's performance over the year.

**Performance Goals/Improvement areas for next review period**

Please provide at least 2 goals or areas for improvement that the employee can complete during the next review period.

## Overall Summary

### Weight

| Competencies Weight | Goals Weight | Total Weight |
|---|---|---|
| 75.00% | 25.00% | 100.00% |

### Rating

Supervisor Rating
2.96 [ Below Standards] Performance does not consistently meet expectations

## Signature

Employee Signature

N/A

Supervisor Signature

*Brian Lewis*

Brian Lewis 11/18/2024

## Supervisor Signatures and Dates

| Supervisor Signature | Date |
|---|---|
| Lewis, Brian | 11/18/2024 |



Supervisor Rating
Meet Standards

**Supervising Others - 2**                                                Weight 3.75%

Understands and ensures that company policies and procedures are adhered to.

Supervisor Rating
Meet Standards

**Supervising Others - 3**                                                Weight 3.75%

Treats staff with respect in all interactions.

Supervisor Rating
Meet Standards

**Supervising Others - 4**                                                Weight 3.75%

Mentors and coaches staff effectively

Supervisor Rating
Meet Standards

**Competencies Summary**

Supervisor Rating                    Section Weight
2.21 [ Below Standards]              75.00%

## Open Ended Questions (1)

**Overall Comments**

**Overall Comments**

7.3

Supervisor Rating
Meet Standards

## Customer Service - 1

Weight 3.75%

Presents a cheerful and positive manner with customers

Supervisor Rating
Meet Standards

## Customer Service - 2

Weight 3.75%

Demonstrates technical and business expertise in dealing with customer problems / concerns.

Supervisor Rating
Meet Standards

## Customer Service - 3

Weight 3.75%

Quickly and effectively responds to customer requests, inquiries and problems.

Supervisor Rating
Meet Standards

## Customer Service - 4

Weight 3.75%

Listens carefully to customers to accurately assess issues, concerns and problems.

Supervisor Rating
Meet Standards

7.4

Weight 25.00%

Supervisor Rating
Meet Standards

## Performance Goals Summary

Supervisor Rating
0.75 [ Meet Standards]

Section Weight
25.00%

# Competencies (1)

Weight 75.00%

Annual Performance Review - Supervising Others

Weight 75.00%

**Accountability and Dependability - 1**

Weight 3.75%

Accepts responsibility for decisions, actions and results.

Supervisor Rating
Meet Standards

**Accountability and Dependability - 2**

Weight 3.75%

Meets deadlines or communicates well in advance of deadlines. Legitimate reason(s) for moving deadlines back.

Supervisor Rating
Meet Standards

**Accountability and Dependability - 3**

Weight 3.75%

Is punctual and begins work as scheduled

Supervisor Rating
Below Standards

**Darren Saunders**

| | |
|---|---|
| **From:** | Robert Maidment |
| **Sent:** | Tuesday, November 19, 2024 3:26 PM |
| **To:** | Darren Saunders |
| **Cc:** | Antoine Wright |
| **Subject:** | RE: Employee review |

Hi Darren,

Thank you for your patience while I reviewed the concerns outlined in your email regarding your performance review and the recent promotion decision. I want to address both matters thoroughly to ensure clarity and fairness.

**Performance Review**

Firstly, the performance review provided to you on November 18, 2024, was shared incorrectly and had not undergone the necessary HR review or approval. This review was incomplete, missing required comments under competencies rated below standards, overall comments, and goals for the next year. Such omissions are not in line with our performance review standards. If it had been properly routed through HR, these issues would have been identified and corrected before it was shared with you.

To rectify this, Clinton Fogarty will personally deliver the revised review to you, which reflects an accurate assessment of your contributions. Based on our findings, your rating will be adjusted to "Meets Standards."

Just to note: The Employee Signature will show "N/A" since the documents are signed with ink vs digitally. Also, the review is to be given out in November of each year based on your November hire date.

I appreciate the challenges you've faced over the last year, including supporting the team while others were unavailable. Your efforts have not gone unnoticed, and it's clear you've remained dedicated under difficult circumstances.

**Promotion Decision**

Regarding the promotion to Security Shift Manager, Clinton clarified that the decision was based on Ralph's overnight experience and his performance during the interview process. This was not a decision made by HR, and any suggestion otherwise was a misunderstanding.

**Moving Forward**

I regret that these missteps have caused you to feel undervalued, and I want to assure you we are committed to providing a supportive and equitable work environment. Clinton will work with you directly to resolve any lingering concerns and set meaningful goals for 2025.

If you have additional questions or wish to discuss this further, please don't hesitate to reach out. Your dedication and experience are valued, and we want to ensure your concerns are addressed fully.

Thank you for your understanding,

1



**Robert Maidment - Vice President of Human Resources**

831 North Federal Highway, Hallandale Beach, FL 33009
rmaidment@thebigeasycasino.com | O 954-924-3262 | M 954-980-6855
TheBigEasyCasino.com

---

**From:** Robert Maidment <rmaidment@thebigeasycasino.com>
**Sent:** Tuesday, November 19, 2024 10:15 AM
**To:** Darren Saunders <dsaunders@thebigeasycasino.com>; Antoine Wright <AWright@thebigeasycasino.com>
**Cc:** Darren Saunders <dsaunders@thebigeasycasino.com>
**Subject:** Re: Employee review

Hi Darren,

Thank you for the email. I will look into this today and get back to you.

Thanks,



**Robert Maidment - Vice President of Human Resources**

831 North Federal Highway, Hallandale Beach, FL 33009
rmaidment@thebigeasycasino.com | O 954-924-3262 | M 954-980-6855
TheBigEasyCasino.com

---

**From:** Darren Saunders <dsaunders@thebigeasycasino.com>
**Sent:** Monday, November 18, 2024 11:32:02 PM
**To:** Antoine Wright <AWright@thebigeasycasino.com>; Robert Maidment <rmaidment@thebigeasycasino.com>
**Cc:** Darren Saunders <dsaunders@thebigeasycasino.com>
**Subject:** FW: Employee review

Good Evening,

 This yearly performance review is totally unacceptable at 2.95 coming from Security Manager Brian Lewis, who's been on FMLA most of the year and was mainly on the Bravo shift.  My performance review in previous years have all been meeting standards, so what's different when two security managers were on FMLA, with the former security director" macro managing" the security department with no directions, blocked-out our PTO days, as two security managers defamed my character, and put the biggest burden on everyone else who kept the security department going.  Security Director Clinton Fogarty made it seem, HR passed me over for the Security Manager position. When  Clinton  asked me Wednesday of the selection process, "...did I hear something from HR?",  he then selected Ralph Rosa as the better choice, (while not even working security in three years).  I was told I was the front runner out of 6 applicants by  Ms. Vicky new Security Director Clinton Fogarty based on my skills/experience and now I have this performance review document, telling me I'm below standards?  It just doesn't add up....

2

There is no leadership in this security department, as Security Manager Brian Lewis left today 11/18/2024 at approximately 22:00, leaving myself and Marc Arcelin to run the department, because it was convenient just like he did on the Bravo shift.  Sorry, but I'm not signing this performance review, after documenting everything I was put through 2023-2024 thoroughly .   I've sent Security Director a direct email on surveillance who are not helping enough with incidents with urgency and sometime the CIP incident report time are off because, they fail to make reviews available to proceed when I was closing by myself.

I would start the CIP report, only to put an estimated time of an incident, because surveillance has me on standby for too long.  I have started CIP reports only to lose them in the process.  I've informed Security Fogarty, "**IF YOU DO NOT PUT A TIME STAMP ON THE CIP REPORT, YOU CAN'T SAVE THE DRAFT**."  If I'm by myself, I can't always wait for them to make the videos available on their time, because another incident may occur and I may have to come back to the report with more information after I've finally seen the video.  The final submission is always reviewed by the director or manager who can correct any mistakes made, but those obstacles obstruct my final review at times, if I'm also running the casino by myself while on worker's comp  (light duty).

This is  totally unacceptable by Security Manager Brian Lewis, who already put the signature N/A and he just handed me the review dated 11/18/2024.  Clinton or Tammy, should have submitted my performance review in September.



**Darren Saunders - Security Shift Supervisor**
831 North Federal Highway, Hallandale Beach, FL 33009
dsaunders@thebigeasycasino.com | 954-924-3159
TheBigEasyCasino.com

**From:** Security@thebigeasycasino.com <Security@thebigeasycasino.com>
**Sent:** Monday, November 18, 2024 10:33 PM
**To:** dsaunders@thebigeasycasfno.com; Darren Saunders <dsaunders@thebigeasycasino.com>
**Subject:** Employee review

C.3

-----Original Message-----
From: DARREN SAUNDERS <daspromark@yahoo.com>
Sent: Tuesday, April 22, 2025 4:44 PM
To: EAO Answer <wceao@myfloridacfo.com>; EAO Answer <wceao@myfloridacfo.com>
Cc: DARREN SAUNDERS <daspromark@yahoo.com>
Subject: [EXT] WORKER'S COMP COMPLAINT as Employer's Carrier is failing their responsibilities for timely medical treatment and timely wage replacement

External Email

_____

(RE: Claim # W004438483 DARREN A. SAUNDERS)

Good Evening,

TO WHOM IT MAY CONCERN:

I'm filing a worker's comp complaint against my employer The BIG EASY CASINO and their insurance carrier PMA Companies:

They have prolonged my  knee surgery recovery with untimely provisions for my medical treatments which could have cost me my life or cause death to me, two times.
1. On December 19, 2024, I was supposed to have (left) knee surgery to repair my torn meniscus. The worker's comp medical facility Total Orthopedic Care, was negligent preparing me for the surgery by not giving me timely medical pre-op information forthe surgery. EVIDENCE: I have attached copies of the medical instructions for both incidents, which all show two-week prep in place, so I can be prepared myself and they failed to do so.  Everything was late and in a rush, trying to make me look like it wasmy fault.  The week of my knee surgery,  I had only (2 to 3 days) to try and get medical clearances clearing me for the surgery.  As a result, I showed up for my knee surgery on the 12/19/2024, with a sugar blood count of 311.   The knee surgery was re-scheduledfor 2/13/2025. In which I used my PTO's prematurely due to the medical center negligence.

2. On April 4, 2025, Total Orthopedic Care, failed to give me pre/post medical instructions for PRP (Platelet-Rich Plasma) with a two-week prep for injections in my knee.  The instruction clearly shows a two prep for the injection, and I NEVER receivedthe medical instructions. Because I was not hydrate, didn't stop taking the oxycodone medicine or had a meal before the PRP injection as the care medical instruction stated, I'm having medical issues.

3. I believe I have nerve damage, as I'm still having striking pains in my arms and my legs from the PRP injection shot. My knee and foot are still swelling as I'm having problem &  medical issues with my left foot itching, so if the Dr. Feanny say thereis no side effects, we have a problem. I'm showing my employer evidence of my medical issues and somebody needs to assist me. So, I'm filing complaints to the department of worker's comp about the problems I'm having.

4. I have asked my HR department and the adjuster for the insurance company, to please give me a clear payment schedule, so I'm not guessing about things, as I try to manage my bills.  Twenty-one days is too long waiting for worker's comp benefits, regardingpay for an injured worker.

Case 0:25-cv-61631-AOV   Document 1   Entered on FLSD Docket 08/12/2025   Page 54 of 92

7/9/25, 11:40 AM                Yahoo Mail - RE: [EXT] WORKER'S COMP COMPLAINT as Employer's Carrier is failing their responsibilities for timely medical trea…

I would like to speak to a Worker's Comp department representative to express my dissatisfaction about the way I've been treated, because now it seems like I have to make a choice between my job vs worker's comp physical therapy.   I have experiencedsome very painful situations and the employer still wants me to come to work in pain, to stop my TPD benefits.  The doctor explained to me they were pressing him to get me back to work, and that's not medical care.  My blood pressure was recorded at 144/92,as the physical therapist attributes the high readings due to pain.  I can be contacted at (786) 868-7975 or (786) 259-2219, with an email:daspromark@yahoo.com

Sincerely Yours,
Darren A. Saunders
Location of the BIG EASY CASINO
831 Federal Highway
Hallandale Beach Fl. 33009
(954) 924-3200

PMA Companies
Customer Service Center
P.O. Box 5231
Janesville, WI 53547-5231
1-888-476-2669

External Email: Please do not click on links or attachments unless you know the content is safe.

8.5

Sent from my Metro By T-Mobile 4G LTE Android Device

-------- Original message --------
From: EAO Answer <wceao@myfloridacfo.com>
Date: 4/28/25 11:48 AM (GMT-05:00)
To: daspromark@yahoo.com, EAO Answer <wceao@myfloridacfo.com>
Cc: "Holman, Jesse" <Jesse.Holman@myfloridacfo.com>
Subject: RE: [EXT] WORKER'S COMP COMPLAINT as Employer's Carrier is failing their responsibilities for timely medical treatment and timely wage replacement

Good Morning Darren,

After reviewing the indemnity checks, the check for 2/13/25 – 2/19/25 for $569.44 appears to be a timely paid waiting period check as the waiting period check issued on the 22nd day from when the disability was established.

Regarding the '23 claim, it is unclear if the employer ever filed a workers' compensation claim. You may wish to follow up with your attorney on this.

Exposure claims can be difficult to prove as the statutes 440.02 (1) Accident state: "An injury or disease caused by exposure to a toxic substance, including, but not limited to, fungus or mold, is not an injury by accident arising out of the employment unless there is **clear and convincing evidence** establishing that exposure to the specific substance involved, at the levels to which the employee was exposed, can cause the injury or disease sustained by the employee."
If this claim was never reported to the carrier, it may have exceeded the statute of limitations for claims which for injuries **on or after** January 1, 1994, the statute of limitations on workers' compensation claims is the longer of the following time periods (440.19 FS):

1. **Within two years from the date of injury, not the date of manifestation.**
2. Within one year from the payment of indemnity benefits.
3. Within one year from the furnishing of remedial medical treatment, care, or attendance.

Again, you may wish to discuss your options regarding the 2023 incident with your attorney.

Regards,

7/10/25, 10:48 AM                    126,318 unread - daspromark@yahoo.com - Yahoo Mail

**yahoo!mail**    Sent ✕    Search in Sent         🔍 Q       Go back to the old Yahoo Mail    Y+ Go ad-free

← Back         ↩ ➡ ✉ ☆ 📁 🗑 •••        ↑ ↓ ✕

Inbox
☆ Starred
➤ Sent
Drafts
Folders
•••

📁 Sent

# WORKER'S COMP COMPLAINT as Employer's Carrier is failing their responsibilities for timely medical treatment and timely wage replacement 📎

**DARREN SAUNDERS**                                              ☆  •••
To: wceao@myfloridacfo.com, and 1 other, Cc: me · Tue, Apr 22 at 5:44 PM ⌄

(RE: Claim # W004438483 DARREN A. SAUNDERS)

Good Evening,

TO WHOM IT MAY CONCERN:

I'm filing a worker's comp complaint against my employer The BIG EASY CASINO and their insurance carrier PMA Companies:

They have prolonged my knee surgery recovery with untimely provisions for my medical treatments which could have cost me my life or cause death to me, two times.

1.
On December 19, 2024, I was supposed to have (left) knee surgery to repair my torn meniscus. The worker's comp medical facility Total Orthopedic Care, was negligent preparing me for the surgery by not giving me timely medical pre-
op information for the surgery. EVIDENCE: I have attached copies of the medical instructions for both incidents, which all show two-
week prep in place, so I can be prepared myself and they failed to do so. Everything was late and in a rush, trying to make me look like it was my fault. The week of my knee surgery, I had only (2 to 3 days) to try and get medical clearances clearing me for the surgery. As a result, I showed up for my knee surgery on the 12/19/2024, with a sugar blood count of 311. The knee surgery was re-scheduled for 2/13/2025. In which I used my PTO's prematurely due to the medical center negligence.

2.
On April 4, 2025, Total Orthopedic Care, failed to give me pre/post medical instructions for PRP (Platelet-Rich Plasma) with a two-
week prep for injections in my knee. The instruction clearly shows a two prep for the injection, and I NEVER received the medical instructions. Because I was not hydrate, didn't stop taking the oxycodone medicine or had a meal before the PRP injection as the care medical instruction stated, I'm having medical issues.

3.
I believe I have nerve damage, as I'm still having striking pains in my arms and my legs from the PRP injection shot. My knee and foot are still swelling as I'm having problem & medical issues with my left foot itching, so if the Dr. Feanny say there is no side effects, we have a problem. I'm showing my employer evidence of my medical issues and somebody needs to
assist me. So, I'm filing complaints to the department of worker's comp about the problems I'm having.

4.
I have asked my HR department and the adjuster for the insurance company, to please give me a clear payment schedule, so I'm not guessing about things, as I try to manage my bills. Twenty-one days is too long waiting for worker's comp benefits, regarding pay for an injured worker.

I would like to speak to a Worker's Comp department representative to express my dissatisfaction about the way I've been treated, because now it seems like I have to make a choice between my job vs worker's comp physical
therapy. I have experienced some very painful situations and the employer still wants me to come to work in pain, to stop my TPD benefits. The doctor explained to me they were pressing him to get me back to work, and that's not medical care. My blood pressure was recorded at 144/92, as the



Starred  Contacts  More

tuition ABOUT HALF NATIONAL WAGE
WGU 🦉 APPLY FREE

tuition ABOUT HALF NATIONAL WAGE
WGU 🦉 APPLY FREE

physical therapist attributes the high readings due to pain.  I can be contacted at (786) 868-7975 or (786) 259-2219, with an email:daspromark@yahoo.com

Sincerely Yours,
Darren A. Saunders
Location of the BIG EASY CASINO
831 Federal Highway
Hallandale Beach Fl. 33009
(954) 924-3200

PMA Companies
Customer Service Center
P.O. Box 5231
Janesville, WI 53547-5231
 1-888-476-2669

**10 attachments**                                                    Download all ⬇

| | |
|---|---|
| PRP PRE-PROCEDURE P...<br>PDF · 1.4 MB |  image000000(9).jpg<br>JPG · 47.5 KB |
|  image000002(2).jpg<br>JPG · 68.5 KB |  image000001(6).jpg<br>JPG · 96.2 KB |
|  image000000(4).jpg<br>JPG · 136.3 KB |  image000000(11).jpg<br>JPG · 136.8 KB |
|  image000000(10).jpg<br>JPG · 227.7 KB |  image000001(7).jpg<br>JPG · 314.7 KB |
|  4723012549094345398(1)...<br>JPG · 345.6 KB |  DARREN SAUNDERS WO...<br>PDF · 10.5 MB |

**DARREN SAUNDERS**                                                    ☆  ⋯
To: wceao@myfloridacfo.com, and 1 other, Cc:  me · Tue, Apr 22 at 5:44 PM ⌄

(RE: Claim # W004438483 DARREN A. SAUNDERS)

Good Evening,

TO WHOM IT MAY CONCERN:

I'm filing a worker's comp complaint against my employer The BIG EASY CASINO and their insurance carrier PMA Companies:

They have prolonged my  knee surgery recovery with untimely provisions for my medical treatments which could have cost me my life or cause death to me, two times.
1.
On December 19, 2024, I was supposed to have (left) knee surgery to repair my torn meniscus. The worker's comp medical facility Total Orthopedic Care, was negligent preparing me for the surgery by not giving me timely medical pre-
op information for the surgery. EVIDENCE: I have attached copies of the medical instructions for both incidents, which all show two-
week prep in place, so I can be prepared myself and they failed to do so.  Everything was late and i



n a rush, trying to make me look like it was my fault. The week of my knee surgery, I had only (2 to 3 days) to try and get medical clearances clearing me for the surgery. As a result, I showed up for my knee surgery on the 12/19/2024, with a sugar blood count of 311. The knee surgery was re-scheduled for 2/13/2025. In which I used my PTO's prematurely due to the medical center negligence.

2.

On April 4, 2025, Total Orthopedic Care, failed to give me pre/post medical instructions for PRP (Platelet-Rich Plasma) with a two-

week prep for injections in my knee. The instruction clearly shows a two prep for the injection, and I NEVER received the medical instructions. Because I was not hydrate, didn't stop taking the oxycodone medicine or had a meal before the PRP injection as the care medical instruction stated, I'm having medical issues.

3.

I believe I have nerve damage, as I'm still having striking pains in my arms and my legs from the PRP injection shot. My knee and foot are still swelling as I'm having problem & medical issues with my left foot itching, so if the Dr. Feanny say there is no side effects, we have a problem. I'm showing my employer evidence of my medical issues and somebody needs to

assist me. So, I'm filing complaints to the department of worker's comp about the problems I'm having.

4.

I have asked my HR department and the adjuster for the insurance company, to please give me a clear payment schedule, so I'm not guessing about things, as I try to manage my bills. Twenty-one days is too long waiting for worker's comp benefits, regarding pay for an injured worker.

  I would like to speak to a Worker's Comp department representative to express my dissatisfaction about the way I've been treated, because now it seems like I have to make a choice between my job vs worker's comp physical

therapy. I have experienced some very painful situations and the employer still wants me to come to work in pain, to stop my TPD benefits. The doctor explained to me they were pressing him to get me back to work, and that's not medical care. My blood pressure was recorded at 144/92, as the physical therapist attributes the high readings due to pain. I can be contacted at (786) 868-7975 or (786) 259-2219, with an email:daspromark@yahoo.com

Sincerely Yours,
Darren A. Saunders
Location of the BIG EASY CASINO
831 Federal Highway
Hallandale Beach Fl. 33009
(954) 924-3200

PMA Companies
Customer Service Center
P.O. Box 5231
Janesville, WI 53547-5231
 1-888-476-2669

Download all ⬇



PRP PRE-PROCEDURE P...

image000000(9).jpg

image000002(2).jpg

image000001(6).jpg

image000000(4).jpg

image000000(11).jpg

9.

# EVIDENCE:

June 2, 2025

The Big Easy Casino (employer) manager's, continues to put injured worker Darren Saunders (plaintiff) in harm's way while on worker's comp (light-duty) with the managing of a casino duties while left alone and on crutches.  These are not accommodations for worker's comp (light-duty) and shows a "hostile work" environment exposing Darren Saunders to acts of retaliation from fellow supervisor (co-workers) who resent the fact I'm on worker's comp (light-duty).  Security manager, left the job two hours before the end of shift on Memorial Day, without informing Darren Saunders of his leaving, displaying another act of resentment towards an injured worker on worker's comp.  The manager does not greet or speak to security supervisor Darren Saunders, the way he does other security management staff, creating a stressful environment for plaintiff.

Case 0:25-cv-61631-AOV   Document 1   Entered on FLSD Docket 08/12/2025   Page 60 of 92

6/27/25, 1:56 PM                    Yahoo Mail - Complaint on Security Manager Brian Lewis unprofessional behavior towards me...

9.2

## Complaint on Security Manager Brian Lewis unprofessional behavior towards me...

From:  DARREN SAUNDERS (daspromark@yahoo.com)

To:    jcassidy@thebigeasycasino.com

Bcc:   daspromark@yahoo.com

Date:  Thursday, June 5, 2025 at 04:01 PM EDT


Good Afternoon Ms. Jane Cassidy,

 I'm making a confidential complaint on Security Manager Brian Lewis and his rude conduct towards me. I have reported his unprofessional behavior to Mr. Robert Maidment and Security Director Clinton Fogarty. I cannot help the fact, I'm on worker's comp and on crutches, but his behavior towards me is not to the standards of the company's employee handbook. I've reported Brian Lewis to Mr. Maidment and Mr. Fogarty, because I think he feels I reported his company vehicle violation, but I had nothing to do with his actions leaving, without telling me he was leaving property. There was another intoxicated incident he didn't report that evening, which happened while he was gone, and it delayed my response. Clinton investigated my report and found Security Manager Brian Lewis was gone for eight minutes off property in the company vehicle. The intoxicated guest issue happened because, guest seem to be able to drink their Player's club liquor gift, while in the casino.

 On Memorial Day, Security Manager Brian Lewis, left two hours before it was time to leave, and he did not say anything to me, just being nasty. Not only did he take an intoxicated guest off property in a company vehicle, and most likely received a financial kick-back, I believe he deleted the CIP report. I was going to add some new details of the intoxicated guest he took off property because he returned yesterday, but discovered the entire incident report was removed. Hopefully, the incident report can be retrieved. Security Brian Lewis is also, using the security office computer for his real estate business not being on the slot floor, as I found two real estate listing documents, left in the security office copy machine printed by him.

 Security Manager Brian Lewis, is also bogarting large jackpot payout tips for himself. Last night, we had two large jackpot payouts back-to-back, I would watch Security Manager Brian Lewis pocket a $100.00 tip for himself and it could have been more with the second jackpot, but we normally share the tips as managers, and again he's being nasty towards me. I would inform Security Director Clinton Fogarty, who says Brian Lewis can keep the tips for himself if he wants, but I do not feel he can just "BOGART" his way moving me from being first at the jackpot payout window. If that's the case, maybe security management should not accept tips and just oversee the jackpot payout. I've escorted terminated slot managers and supervisors, for not sharing tips with slot staff, and I express to Clinton it's not fair to me or anyone else. Security Manager Brian Lewis is retaliating against me and it's stressing me out.

 I would express to Mr. Clinton, because of my worker's comp reduction of salary, I would have like the opportunity to receive a possible tip from one of the several jackpots he's been bogarting within the past week. I'm not getting paid for the hours I'm at the work comp doctors or the physical therapy, which sometimes causes me to be late for work, because they have no other times.

 This whole ordeal has been very stressful for me and I feel I need to take advantage of the EAP offer. Last week, when I was going on the slot floor, Clinton basically asked me, "WHERE ARE YOU GOING?", confining me to the security office, then last Tuesday, telling me I need to do something outside the office, as my foot is still swollen. They did not

6/27/25, 1:56 PM                    Yahoo Mail - Complaint on Security Manager Brian Lewis unprofessional behavior towards the...

Case 0:25-cv-61631-AOV    Document 1    Entered on FLSD Docket 08/12/2025    Page 61 of 92

9.3

give me instructions of what they want me to do, while doing light-duty in the security office. I'm trying to make the best of the situation, but the hostile work environment Security Brian Lewis is conducting towards me, is unacceptable. Security Manager Brian Lewis, forgets while both Clinton and Brian was out for over 4 to 6 months, we sucked it up as a security department, and got through it until they both returned.

Sincerely Yours,
Darren A. Saunders (Security Supervisor)

    MEMO COMPANY VEHICLES-06052025153547.pdf
1.1 MB

Outlook  9.4

---

**Re: Information not included in the Wednesday 5/21/2025 intoxication incident...**

---

**From** Clinton Fogarty <CFogarty@thebigeasycasino.com>

**Date** Tue 5/27/2025 4:14 PM

**To** Darren Saunders <dsaunders@thebigeasycasino.com>

**Cc** Robert Maidment <rmaidment@thebigeasycasino.com>

We spoke with Brian. We conducted a review and noticed that Brian was gone for 8 minutes. We observed Brian assist you with the guest near the Bayou Bar. We have also advised Brian that he cannot leave you alone. The situation has been handled. Thank you for your email in regard to the situation.



**Clinton Fogarty - Security Director**
831 North Federal Highway, Hallandale Beach, FL 33009
cfogarty@thebigeasycasino.com | 954-924-3203
TheBigEasyCasino.com

---

**From:** Darren Saunders <dsaunders@thebigeasycasino.com>

**Sent:** Saturday, May 24, 2025 9:17 PM

**To:** Clinton Fogarty <CFogarty@thebigeasycasino.com>

**Cc:** Robert Maidment <rmaidment@thebigeasycasino.com>

**Subject:** Information not included in the Wednesday 5/21/2025 intoxication incident...

Good Evening Gentlemen, (RE: Transportation of Patrons in Vehicles)

After catching up on security incidents from the past two days (Thursday & Friday), I've read over the intoxicated incident report on Wednesday night.  I'm not sure why security manager Brian Lewis just didn't proceed with his plan of paying a taxi to take the intoxicated guest home.

Because I'm still on worker's comp (light-duty), I thought Brian knew I was not to be left alone supervising the casino on crutches.  When Brian Lewis was dealing with the intoxicated guest from incident SEC-25-0280, I thought he was in the process of getting money to pay for the taxi.

Brian Lewis would leave out of the security office back door to the compound area without stating a reason, but then casino operation manager William White and a waitress, was urgently calling security to the Bayou Bar.  There was another intoxicated guest causing problems for employees and patrons. After the third time calling security urgently on the radio with Security Manager Brian Lewis not responding, I had to get on my crutches to see what was going on at the Bayou Bar.  I would encounter the unruly intoxicated (B/M) guest, causing problems at kiosk #4.  I calmed the patron down as he was extremely intoxicated, after finishing a whole bottle of player's club gift liquor.  I never knew Brian took

On Monday May 26, 2025 for Memorial Day, Security Manager Brian Lewis left for the day at 22:00, without saying anything.  How were we suppose to know  he was leaving for the night after grabbing his bags?  Normally, he puts his items away in his car, then he comes back to the security office.  He left me and Security Supervisor Marc Arcelin guessing, or maybe he told Marc, but when he was in the office with me, he just grab his bags leaving without saying anything.    It appears he still has some tension over the incident last week, taking that intoxicated guest home in the security vehicle, which didn't involve me.  Surveillance probably "red-flagged" the incident, but for some reason, Brian has some serious tensions towards me.  He seems like he's overwhelmed and displaying some rude attitude towards me, as he speaks to the other supervisors when they enter or leave the security office, but gives me the cold-shoulder.  He's more than welcome to continues acting unprofessional towards me, but when it comes to the job, he needs to remember the employer's handbook.

Apparently, he has forgotten when he was on FMLA with Security Director Clinton Fogarty for several months, all security supervisors had to make huge sacrifices in his absence.  I can't help my worker's comp situation and I'm trying not to address the recent situations directly.  When he left at 22;00, on Memorial Day, that marks the second time he just left the security office, not leaving details of his activities.  Maybe a meeting needs to be conducted, to "cool-off" heads.  Because. I need an escort sometimes from the office with the help of the  golf-cart to my car, I'll leave a few minutes early before the rotation of the outside rover's.  This is just my opinion but I'm addressing the obvious tensions of the situation.  Have A great Day!

-Security Supervisor Darren Saunders

# THE BIG EASY CASINO

**The Big Easy Casino**

831 N Federal Hwy, Hallandale Beach, FL 33009
www.thebigeasycasino.com

---

**SEC-25-0419 - Employee - Medical - Start Time 08/06/2025 22:29**

**Author:** Brian Lewis

**Report Number:** SEC-25-0419

**Start Time:** 08/06/2025 22:29

**End Time:**

**Report Group:** Security Reports

**Report Type:** Employee - Medical

**Note:** At approximately 2002 hours Wednesday, 06th, August, 2025 this writer security shift manager Brian Lewis was called to the North Poker entrance by security shift supervisor Darren Saunders.

**Reported:** 08/06/2025 20:02

**Occurred:** 08/25/2025 20:00

**General Location:** 1st Floor

**Secondary Location:** Gaming Floor

**Specific Location:** Poker Room

**Narrative:** On Wednesday, August 6, 2025, at approximately 2002 hours, this writer, security shift manager Brian Lewis, was called to the North Poker entrance by security shift supervisor Darren Saunders. Upon arrival at the north poker entrance, Supervisor Saunders was sitting on a chair behind the podium. Supervisor Saunders told this writer that he was experiencing Back Pain and asked if I had any Tylenol. I told supervisor Saunders that I will have to check. I checked and did not have any Tablets, so I radioed Darren and informed him that I did not have any Tablet. About 5 minutes later while in the surveillance review room, I overheard Supervisor Darren on the radio saying to the North Lot Rover Troy Wells to go to the security office and check in Supervisor April Leamey desk and bring him some tablets. Supervisor Saunders never reported to me as to why he was experiencing Back Pain.

A review was done, and the following was observed on Video:

At 1946 hours a B/M who was later identified as Tetrick Kiffin was seen walking out of the west entrance. At 1947 hours, Kiffin began stumbling and seem to have trouble walking. Mr. Kiffin then held to one of the concrete pillars in front of the West entrance, for support and to prevent himself from falling and stayed on the concrete pillar in a lying position. At the said time, supervisor Saunders was seen arriving and began speaking to Mr. Kiffin while he was leaning on the concrete pillar for support.

At 1948 hours Supervisor Saunders called this writer and said he was calling Fire Rescue for Mr. Kiffin and to bring a wheelchair so that we can take Mr. Kiffin to the North Entrance.

At 1950 hours, this writer arrived at the West entrance with the wheelchair.

At 1951 hours, this writer along with a B/M guest who assisted me, lifted Mr. Kiffin off the concrete Pillar and placed him in the wheelchair.

At 1952 hours, this writer began wheeling Mr. Kiffin down the west corridor, accompanied by supervisor Saunders to the North Parking.

At 1953 hours, as we arrived by the Loading dock, Fire Rescue also arrived and began attending to Mr. Kiffin. Supervisor Saunders then walked away to the North Entrance but never reported to this writer that he had back pain or any injury.

At 2000 hours supervisor Saunders was seen sitting on a chair behind the podium in the Poker Room.

At 2001 hours, supervisor Saunders was seen with his head down on the podium counter.

At 2002 hours, supervisor Saunders was seen making a radio transmission.

At 2003 hours, this writer was seen arriving at the poker podium.

At 2004 hours supervisor seem to go down on the floor behind the poker podium.

At 2015 hours, security officer Troy Wells was seen in the security office going through security supervisor April Leamey desk and was seen taking 4 tablets out of a bottle and placing the tablets in a napkin.

At 2018 hours Supervisor Saunders was seen getting up off the floor.



At 2020 hours security officer Troy Wells was seen handing Supervisor Saunders the napkin with the tablets.

At 2026 hours, after Supervisor Saunders got up off off the floor, Officer Wells can be seen pushing Supervisor Saunders through the building in a wheelchair. Officer Wells pushed supervisor Saunders to the Security Office, to his desk.

At 2105 hours, Supervisor Saunders can then be seen walking and pushing the wheelchair back to the West Entrance, where the wheelchairs are kept, near the receptionist area.

## Employee

**Name:** Darren Saunders

**Department:** Security

**Employee Num:** 1756

**Position:** Security Supervisor

8/11/25, 1:45 PM Yahoo Mail - Re: The Wed 8/6/2025 medical incident report Security Manger Brain Lewis, has errors...

Case 0:25-cv-61631-AOV Document 1 Entered on FLSD Docket 08/12/2025 Page 66 of 92

9.8

**Re: The Wed 8/6/2025 medical incident report Security Manger Brain Lewis, has errors...**

From: Robert Maidment (rmaidment@thebigeasycasino.com)

To: daspromark@yahoo.com; awright@thebigeasycasino.com

Date: Monday, August 11, 2025 at 12:39 PM EDT

Hi Darren,

Thank you for the email. We will look into this and get back to you with our findings. I'm out of the office until tomorrow so will be in touch after that.

Thanks,



**Robert Maidment - Vice President of Human Resources**
831 North Federal Highway, Hallandale Beach, FL 33009
rmaidment@thebigeasycasino.com | O 954-924-3262 | M 954-980-6855
TheBigEasyCasino.com

Disclaimer: The information contained in this message may be privileged and confidential, protected from disclosure, and/or intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, distribution, copying or other dissemination of this communication is strictly prohibited. If you received this communication in error, please immediately reply to the sender, delete the message and destroy all copies of it.



**From:** daspromark <daspromark@yahoo.com>
**Sent:** Monday, August 11, 2025 12:27:53 PM
**To:** Robert Maidment <rmaidment@thebigeasycasino.com>; Antoine Wright <AWright@thebigeasycasino.com>
**Subject:** The Wed 8/6/2025 medical incident report Security Manger Brain Lewis, has errors...

Good Morning Gentlemen,

I just had some concerns about the employee medical incident report (involving my strained back) due to Security Manager Brian Lewis reporting... Today I have mediation with the company but needed the correct facts and details on my latest medical incident.

On Saturday 8/9/2025, I requested to see the incident on surveillance for the times and adding photos to the report but I was declined by Security Director Clinton Fogarty after surveillance alerted him. My issues are; I was first sypervisor on the scene of the medical incident and I have information and photos of the incident which needed to be included. As you can see, no photos were included as Ms. Jane Cassidy requires.

*Gi9*

It's my responsibility as the first supervisor to submit the report about what occurred medically, even as I was experiencing a medical issue. I did not ask Brian to do my report, but he loves staying in the security office basically all shift, when it should be the other way around  as I'm still hurting with injury, but I'm  always there to assist guest in there medical needs...

Brian has inaccuracies  stating, ... I never stated what was the medical injury to my back!", when he was given the first report of injury form and the decline of medical transport form.  Brian even joked, "...oh no don't tell me I have to get fire rescue for you too?" I told him no need, I hurt my back with the medical and asked if we had tylenol as I was in so much pain, I had to get on the floor to adjust myself..  I was leaning in on the guest to keep him from sliding forward and Brian wrote I had my hand on is back standing on the side of him calling 911 as the guest was lying there...  I asking the guest if he was  intoxicated and the guest said no, he told me his head hurts and I was leaning in talking to him.. I was letting the 911 operator know, the guest was sliding off the stone fixture and I desperately calling Brian on the radio for a wheelchair as I was speaking to 911.  (This probably on the 911 transcript) The guest was not just laying there, he was experiencing a stroke with loss of body function which was correctly stated, as Brian had to put his leg up on the wheelchair pedal, after the other guest helped Brian move the guest over to the wheelchair.  I want him to correct his statement because Brian called surveillance about a loss cell phone after I radio him, which made me mad.

My motto is no one dies on my shift.... But, Brian please don't lie on me saying I never told you why my back was hurting....  Brian still acts funny towards me, but I still remain professional even to go as far as sharing my tips with him as two large jackpot paid outs happened that same evening of the medical. (This was an issuse I addressed, with Brian bogarting me not sharing tips with me) Brian was creating a hostile workplace for me. Even more importantly, Brain asked me about Fast Care, due to the time. I declined fast care because I felt they were mostly likely closed and I was not in a good condition to drive.  TROY WELLS helped me when I was really having back spasms, but once the aspirin kicked in I was feeling a little better but at 10pm just in case any other pains occured.  I wanted to make a copy of the first report of industry and the declined medical transport form, but did not see it in the first injury folder or on Brian desk, so I texted him yesterday if he scanned the two documents and he said yes...  If he scanned and signed the documents, "WHY DID BRIAN SAY ON THE INCIDENT REPORT I NEVER TOLD HIM, WHAT WAS MY MEDICAL BACK ISSUE...?" Brian is defrauding me and defaming my character...

Please look into the facts, as I assisted another guest from almost a fatal incident if he would have hit his head on that stone fixture.

Sent from my Metro By T-Mobile 4G LTE Android Device

9.10

 Outlook

---

## TWO REPORTS

---

**From** Brian Lewis <BLewis@thebigeasycasino.com>

**Date** Thu 8/7/2025 12:05 AM

**To** Security Mailbox <SecurityMailbox@thebigeasycasino.com>

**Cc** Jane Cassidy <jcassidy@thebigeasycasino.com>; Dan Adkins <dka@thebigeasycasino.com>

SEC-25-0419  Supervisor Darren Saunders reported having Back Spasms and left at 10.00 p.m.

SEC-25-0420 Male guest almost fell in the West entrance  and Fire Rescue was called.



**Brian Lewis - Security Shift Manager**
831 North Federal Highway, Hallandale Beach, FL 33009
blewis@thebigeasycasino.com | 954-924-3240
TheBigEasyCasino.com

9:11

# THE BIG EASY CASINO

**The Big Easy Casino**

831 N Federal Hwy, Hallandale Beach, FL 33009
www.thebigeasycasino.com

## SEC-25-0419 - Employee - Medical - Start Time 08/06/2025 22:29

**Author:** Brian Lewis

**Start Time:** 08/06/2025 22:29

**Report Group:** Security Reports

**Report Number:** SEC-25-0419

**End Time:**

**Report Type:** Employee - Medical

**Note:** At approximately 2002 hours Wednesday, 06th, August, 2025 this writer security shift manager Brian Lewis was called to the North Poker entrance by security shift supervisor Darren Saunders.

**Reported:** 08/06/2025 20:02

**Occurred:** 08/25/2025 20:00

**General Location:** 1st Floor

**Secondary Location:** Gaming Floor

**Specific Location:** Poker Room

**Narrative:** On Wednesday, August 6, 2025, at approximately 2002 hours, this writer, security shift manager Brian Lewis, was called to the North Poker entrance by security shift supervisor Darren Saunders. Upon arrival at the north poker entrance, Supervisor Saunders was sitting on a chair behind the podium. Supervisor Saunders told this writer that he was experiencing Back Pain and asked if I had any Tylenol. I told supervisor Saunders that I will have to check. I checked and did not have any Tablets, so I radioed Darren and informed him that I did not have any Tablet. About 5 minutes later while in the surveillance review room, I overheard Supervisor Darren on the radio saying to the North Lot Rover Troy Wells to go to the security office and check in Supervisor April Leamey desk and bring him some tablets. Supervisor Saunders never reported to me as to why he was experiencing Back Pain.

A review was done, and the following was observed on Video:

At 1946 hours a B/M who was later identified as Tetrick Kiffin was seen walking out of the west entrance. At 1947 hours, Kiffin began stumbling and seem to have trouble walking. Mr. Kiffin then held to one of the concrete pillars in front of the West entrance, for support and to prevent himself from falling and stayed on the concrete pillar in a lying position. At the said time, supervisor Saunders was seen arriving and began speaking to Mr. Kiffin while he was leaning on the concrete pillar for support.

At 1948 hours Supervisor Saunders called this writer and said he was calling Fire Rescue for Mr. Kiffin and to bring a wheelchair so that we can take Mr. Kiffin to the North Entrance.

At 1950 hours, this writer arrived at the West entrance with the wheelchair.

At 1951 hours, this writer along with a B/M guest who assisted me, lifted Mr. Kiffin off the concrete Pillar and placed him in the wheelchair.

At 1952 hours, this writer began wheeling Mr. Kiffin down the west corridor, accompanied by supervisor Saunders to the North Parking.

At 1953 hours, as we arrived by the Loading dock, Fire Rescue also arrived and began attending to Mr. Kiffin. Supervisor Saunders then walked away to the North Entrance but never reported to this writer that he had back pain or any injury.

At 2000 hours supervisor Saunders was seen sitting on a chair behind the podium in the Poker Room.

At 2001 hours, supervisor Saunders was seen with his head down on the podium counter.

At 2002 hours, supervisor Saunders was seen making a radio transmission.

At 2003 hours, this writer was seen arriving at the poker podium.

At 2004 hours supervisor seem to go down on the floor behind the poker podium.

At 2015 hours, security officer Troy Wells was seen in the security office going through security supervisor April Leamey desk and was seen taking 4 tablets out of a bottle and placing the tablets in a napkin.

At 2018 hours Supervisor Saunders was seen getting up off the floor.

9.12

At 2020 hours security officer Troy Wells was seen handing Supervisor Saunders the napkin with the tablets.

At 2026 hours, after Supervisor Saunders got up off off the floor, Officer Wells can be seen pushing Supervisor Saunders through the building in a wheelchair. Officer Wells pushed supervisor Saunders to the Security Office, to his desk.

At 2105 hours, Supervisor Saunders can then be seen walking and pushing the wheelchair back to the West Entrance, where the wheelchairs are kept, near the receptionist area.

**Employee**

**Name:** Darren Saunders

**Department:** Security

**Employee Num:** 1756

**Position:** Security Supervisor

9.13



**The Big Easy Casino**

831 N Federal Hwy, Hallandale Beach, FL 33009
www.thebigeasycasino.com

## SEC-25-0420 - Patron - Medical - Start Time 08/06/2025 22:37

| | |
|---|---|
| **Author:** Brian Lewis | **Report Number:** SEC-25-0420 |
| **Start Time:** 08/06/2025 22:37 | **End Time:** 08/06/2025 23:10 |
| **Report Group:** Security Reports | **Report Type:** Patron - Medical |

**Note:** At approximately 1946 hours Wednesday, 06th, August, 2025 this writer security shift manager Brian Lewis heard a radio transmission from security officer Malik Dupree stating that a male guest who was walking out the west entrance seem to be a Signal 2.

| | |
|---|---|
| **Reported:** 08/06/2025 19:46 | **Occurred:** 08/06/2025 19:47 |
| **General Location:** Outside | **Secondary Location:** BOH |
| **Specific Location:** Verandah | |

**Narrative:** On Wednesday, August 6, 2025, at approximately 1946 hours, this writer, security shift manager Brian Lewis, heard a radio transmission from security officer Malik Dupree stating that a male guest who was walking out the west entrance seemed to be a Signal 2 (intoxicated). At approximately 1948 hours, security shift supervisor Darren Saunders called this writer stating he would be calling fire rescue for the guest and requested that this writer bring a wheelchair to take the guest to the North Entrance.

At approximately 1950 hours, this writer arrived at the west entrance with the wheelchair. I observed a B/M who was later identified as Tetrick Kiffin, leaning on one of the concrete pillars in front of the west entrance in a lying position. Supervisor Saunders was standing next to Mr. Kiffin with his hand on Mr. Kiffin shoulder and he was on the phone calling fire rescue. This writer, along with an unknown B/M guest, lifted Mr. Kiffin off the concrete pillar and placed him in the wheelchair. Mr. Kiffin had trouble lifting both of his feet to place them on the wheelchair foot stand. This writer lifted both Mr. Kiffin's feet and placed them on the wheelchair foot stand. Mr. Kiffin was then wheeled to the north parking lot. At 1953 hours Fire Rescue arrived by the Loading Dock Gate and attended to Mr. Kiffin.

At 1959 hours, EMS took Mr. Kiffin into the Ambulance. EMS told this writer that Mr. Kiffin is being transported to Memorial Hospital, and they gave Run#5071.

A review was done, and the following was observed:

At 1946 hours, Mr. Kiffin was seen walking out the west entrance doors.

At 1947 hours, Mr. Kiffin began stumbling and almost fell but held on to one of the concrete Pillars in front of the west entrance for support. Supervisor Sanders was seen arriving and began talking to Mr. Kiffin who was leaning on the concrete pillar in a lying position.

At 1950 hours, this writer and an unknown B/M lifted Mr. Kiffin off the concrete Pillar and placed him in the wheelchair.

At 1952 hours, this writer, accompanied by supervisor Saunders, wheeled Mr. Kiffin down the west corridor to the North Parking Lot in front of the Loading Dock gate.

At 1953 hours, Fire Rescue arrived by the Loading dock and began attending to Mr. Kiffin

**Linked Reports:** SUR-25-1347

## Patron

| | |
|---|---|
| **Name:** Tetrick A Kiffin | **Alias:** |
| **Race:** African American | **Gender:** Male |
| **Eye color:** Brown | **Hair color:** Bald |
| **Height:** 5'09" Inches | **DOB:** 08/15/1947 (77) |
| **Street Address:** 3811 SW 69th AVE Miramar, FL 33023-6638 | |

*10.*

 Outlook

---

**Re: Security Manager Brian Lewis**

---

**From** Robert Maidment <rmaidment@thebigeasycasino.com>

**Date** Thu 5/29/2025 12:33 PM

**To** daspromark@yahoo.com <daspromark@yahoo.com>; Clinton Fogarty <CFogarty@thebigeasycasino.com>

**Cc** Darren Saunders <dsaunders@thebigeasycasino.com>

Hi Darren,

Thank you for taking the time to share your concerns. I know you're currently managing a lot with your worker's comp situation, and I appreciate you continuing to support the team while on restricted duty. It's clear you're trying to handle this professionally, and I want you to know your perspective is being heard.

We will be speaking directly with Brian tomorrow to better understand the situation and ensure there's alignment and professionalism across the team. In the meantime, if anything else comes up or you feel there's more we should know, please don't hesitate to reach out.

We're here to support you and will make sure this is addressed.

Take care,



**Robert Maidment - Vice President of Human Resources**
831 North Federal Highway, Hallandale Beach, FL 33009
rmaidment@thebigeasycasino.com | O 954-924-3262 | M 954-980-6855
TheBigEasyCasino.com

---

**From:** DARREN SAUNDERS <daspromark@yahoo.com>

**Sent:** Thursday, May 29, 2025 12:20:09 PM

**To:** Clinton Fogarty <CFogarty@thebigeasycasino.com>

**Cc:** Robert Maidment <rmaidment@thebigeasycasino.com>; Darren Saunders <dsaunders@thebigeasycasino.com>

**Subject:** Security Manager Brian Lewis

Good Afternoon Gentlemen,

**Darren Saunders**

| | |
|---|---|
| **From:** | Jane Cassidy |
| **Sent:** | Monday, September 9, 2024 10:51 AM |
| **To:** | Darren Saunders |
| **Subject:** | RE: Request for updates on the Worker's comp investigation for Security Supervisor Darren Saunders |

Good morning,

Antoine has reached out to the adjuster, and hopes to hear back from her today with an update.
I will stay in touch with you.



## Jane Cassidy - Chief Admin. Officer
831 North Federal Highway, Hallandale Beach, FL 33009
jcassidy@thebigeasycasino.com | 954-924-3123
TheBigEasyCasino.com

**From:** Darren Saunders <dsaunders@thebigeasycasino.com>
**Sent:** Sunday, September 8, 2024 10:51 PM
**To:** Jane Cassidy <jcassidy@thebigeasycasino.com>
**Subject:** Request for updates on the Worker's comp investigation for Security Supervisor Darren Saunders

Good Evening, Ms. Jane Cassidy,

 I wanted to know if the worker's comp investigation on my injury was completed, so I can have the MRI scheduled for my left knee?  About two weeks ago, Fast Care stopped scheduling me for checkups, due to the fact my MRI was not done, keeping me on the same work status.

 I was drilled by company's PMA's adjuster Ms. Erica Lassiter, who informed me the investigation was still ongoing and I needed to complete a signed affidavit fraud document.  The document was signed and mailed to the PMA companies, but I really need to get the MRI, to start the physical therapy or get surgery.   I feel both Security Director Brad Dunlap and Security Manager Tammy McArthur, defamed my character by not telling the truth during an investigation about the trash compactor incident.  That's not fair to me, because I was genuinely concerned about the outcome of her job status, how it was presented to me by Security Manager Tammy McArthur, as Security Director Brad Dunlap, never returned my call about the incident on that night.  PMA companies, Ms. Erica Lassiter questioned me very hard about the incident and any previous injuries and I provided her the following list:

**Previous Worker's Comp case:**  Security Supervisor Darren Saunders prevented an intoxicated older white male from falling backwards and hitting his head on the sidewalk.  The guest leaned up against Security Supervisor legs while using a light pole to support the older guest, until fire rescued arrived, putting a strain on the back of security Supervisor Darren Saunders.

1

**INC# 2021-12-00130** (12/29/2021): Michael Neylan (Assault & Intoxication) Security Supervisor and Security Manager Clinton Fogarty, would have to wrestles and subdue a intoxicated guest after the punched /assaulted Security manager Clinton Fogarty in the stomach. Guest was held down until Hallandale Beach police units came to assist.

**SEC-23-0269** (5/29/2023): Security Supervisor Darren Saunders, fell off a security golf during a miscommunication assisting Security Officer Julia Taylor, who was having problem with cars drag racing in the south parking lot.

**SEC-23-0504** (9/24/2023): Security Supervisor Darren Saunders, assisted Security Supervisor Crystal Gardner with an intoxicated female guest, who knocked herself out after an encounter with the wall by the VIP lounge. Security Supervisor Darren Saunders lifted the female from the ground to a wheelchair, but the guest would not bend her legs. This caused Security Supervisor Darren Saunders to hold the lady up for a longer period of time, trying to get her into the wheelchair. Security Supervisor Darren Sauders had to chop the back of her knees, to make her legs bend so she could be placed in the chair.

**SEC-23-0700** (12/31/2023: Intoxicated (Black/Female) was running from the property/security trying to get to her car to drive off property. Security Supervisor stopped her from entering into her car by leaning on the car drivers door, as the unknown black female continued to slam her driver's side car door into the left side of Security Supervisor Darren Saunders (16x's). Saunders tried to stop her from driving off property intoxicated by leaning up against the car door. Security Supervisor Crystal Gardner witnessed the incident, as the intoxicated (B/F) continued hitting Saunders with her car door, until Hallandale Beach police units arrived to stop her.

**SEC-24-0027** (1/15/2024): Serhii Palkin (Overdose) life was saved by Security Supervisor Darren Saunders and Security Supervisor Crystal Gardner who used the defibrillator to help keep him going until fire rescue arrived. 911 operator instructed Saunders to lay Serhii on the ground from his poker chair and start life saving measures to keep him alive until fire rescue came.

**NO INCIDENT NUMBER** for March,2, 2024, the trash compactor incident on Saturday at 22:44, which was kept confidential. Security Supervisor Darren Saunders would act on behalf of Security Manager Tammy McArthur, who accidentally tossed an important money room key in the security office trash can.

**SEC-24-0208** (4/6/2024) 9:58: Karissa Cayer falls on the slot floor after having a medical issue as Security Supervisor Darren Saunders had to stop a money fill escort to assist.

**SEC-24-0313** (5/26/2024) 17:32: Unknown large (B/F) 250-300+ pounds, fell on the floor from a slot chair after husband would not help with her seat. The husband would then request Security Supervisor Darren Saunder to help pick her up from the floor, causing a great strain on Saunders legs and back.

**SEC-24-0345** (6/10/2024): Cassandra Antonie (Poker chip theft) Security Supervisor Darren Saunders was involved with a foot chase, trying to recover poker chips from a guest who was robbed. Saunders was able to help capture the poker theft near Biscayne Blvd., with the help of Hallandale Beach police department.

**SEC-024-0387** (06/30/2024): Elleny Johnson (fell from her vehicle's mobile-chair ramp and was rolling on the street of the south parking lot). Security Supervisor Darren Saunders and Security officer Jose Torres, had to lift her up back on to her mobile chair.

These are documented incidents within in a two-year time frame, involving me as I requested for physical therapy for the physical demands of the job. Early July, Security Saunders was on an escort with MR 72 Joseph Norelus and had wrong or missed step on the indention of the floor causing some discomfort to my left knee, as the escort stopped for a minute until I was able to move again. If you can assist with this process, I would greatly appreciate it. Thank You.

2

11.2





Darren Saunders – Q& A

07/29/2024 @ 3:00 pm

Questions:

1. On 03/02/2024, why do you believe you needed to enter the trash compactor to search for a missing key?
2. In your email, you stated, "Security Director Brad Dunlap was informed of the incident and made former Security Director Tammy McArthur feel like her job was on the line." Did Tammy tell you her job was on the line if the key was not found?
3. Did Clinton tell you multiple times to not enter the trash compactor as it was deemed a safety concern?
4. Were any precautions taken to ensure that the trash compactor could not be operated while you were inside?
5. How much time did you spend searching for the key and who was present for the duration of your search?
6. When were you informed that the key you were searching for was not of high importance or great consequence?
7. How did you injure yourself in search of the key?
8. On 03/02/2024, why didn't you immediately report the injury or fill out a report of injury form?
9. Did you mention being injured to management at any point between 03/02/2024 & 07/17/2024?
10. Why did you wait until July to inquire about worker's comp through email to HR?
11. Can you walk us through the meeting you had with Brad regarding spending too much time in the office?
12. Did Brad specifically accuse you of time theft?
13. Is there anything you would like to add?

Answers:

1. Well, it started because they asked me for an emergency drop that was coming in I had to get the keys and I noticed one was missing. We had to go into surveillance to see what happened to the key, that was when we found out that Miss Tammy lost the key..it took us a while to figure out what happened to the key. We had two hours left of the shift when Tammy came in with jeans and boots...tammy was wiping down the desk and the key was
2. Yes, because once we saw it happen we showed her and she could not believe it. I think she had some communication with Brad, and she said yeah I have to go do it. Then it went covert, and we didn't know much about it. Tammy even put it in text saying she didn't know if it was going to be a write up or something else. It was me, crystal and Clinton who went into surveillance to see if we could track where the key had gone. Clinton said he couldn't



go into it because of his toes and stuff. Crystal was not going to go in because she is too small.

3. Well, he was telling me that in the surveillance room. Since her job was on the line I told him that if we could do it, I would help her with that. He did tell me not to do it but I wanted to try it because I didn't want to let her lose her job. We tried to get the bags with hooks but the bags started ripping. There was only person that used it because the trash compactor was kind of empty, I thought that if we go in...

4. Yes, we got maintenance involved. They were the ones that helped us get items to help us bring the trash out. They assisted and brought the ladder, everyone that was in the poker room smoking...Brian Rodriguez was telling me the other day that he thought we were looking for a weapon. When it got to the point where we couldn't get the bags, I thought we finally got to a bag.

5. Everybody that was in management, Clinton and Crystal got me gloves, tammy was also there just watching. Treverse went into the trash compactor also because it got to the point where the smell was just too much. When I came down that was when I felt my knee buckle, it popped back in and my time was running because I remember it was 11 and the next crew came in and we told them that we were looking for something.

6. Actually, the next day because they kept it quite, we were going to get back to it tomorrow. We were going to get maintenance to try and open it open and look for the key. It was really a plan for the next day where there was light out if that was something we could do to get the key from the back.

7. Stepped down first on one bag and then stepped on a bag that was not level and my knee buckled.

8. Honestly because when my knee popped I felt it go back into place, I just didn't think about it right then and there. I felt a sting, but I didn't think it was anything serious. We were also deflated because we couldn't find the key and didn't know what was going to happen to tammy.

9. I talked to Clinton and asked if he could remember be saying something that day when I came down but he said no and I can't remember if it was really that day that I really hurt it or if it was continuous use of my knee. I was helping up this guys wife that was heavy and I remember going down to lift her, she was really heavy and her husband was on the other side but her center of gravity was just too much. My other option was crystal and she cant really lift her up. It is not only that there were other things too...there was this lady who was intoxicated and at that time I remember thinking about things that would strain my back and my legs. She fell and hit her head and she had the biggest hickey on her head. We went to try to lift her to put her in the wheelchair and her legs were locked and she was not bending her knees to get in the wheelchair to wheel her out. Even though she was lighgt that did put a lot of starin on me. Sometimes these guests when they fall and get hurt they may not know where they are or what is going on. Jose helped me the day that this lady feel out of her wheelchair on the street. On that day we had to figure out how to pick her up and lift her into the chair. I asked her if she wanted us to wait for the EMTs and she said no and we tried to get her back in the chair. I don't know if I told you that I was thinking of getting some therapy for my back because some of the things we do here ut puts a strain on us....I once fell out of a golf cart and I just think that it is a lot of strains that later turn into an injury. The guy

12,2

Ramirez we had to save in the defibrillator we called 911 and we had to put him ion the floor, he was built like a wrestler. I got behind him and tried to lift him and get him down to the floor. There are also some dead zones in the casino I told Brad about, sometimes I think we need someone else to call so they have reception with the paramedics on my phone I lost signal and I had to step away to regain reception. We were able to resituate him...there have been so many things that have happened that have continued to strain things in my knee. I did call Brad before we got into the trash compactor, and I remember telling him that I was getting in there for tammy. I checked my phone records and I did call him around 10:30. The way tammy made it sound was that brad told her something in mean spirit which made him feel that she was going to lose her job. Tammy made it seem that it was her job on the line or we would have never gotten into the compactor. I heard her reaction to her talking to Brad on the phone. It sounded like he was being very sarcastic...when we heard the key was in the trash we continued our work day until tammy came in with the jeans boots and the sweatshirt. I asked her the next day if she reported it to HR and she said no.

10. I talked to Joe on a Monday or Tuesday when my leg went dead and I thought I needed to figure out if I can get some therapy for it. When I saw the guy, he said it was swollen and he didn't even want me to walk on it. It is getting to the point where my knee can't take it.

11. He called me about ^:30 and I was surprised because I didn't know he was still here. I thought we were going to be talking about Marilou Coleman and what she had said to me a few months ago. Then we started talking about the 32 hours and I told him I felt like we were doing a lot of the work load with changing our schedules and trying to do the things that usually Clinton was doing. I didn't even know what he meant by 32 hours, 32 what. Then toward the end of the meeting I told him that it was wrong that we weren't getting any kudos for the workload we were doing. He then told me to bring in crystal for the next day and I found out he told her that she was in the office for 9 hours. He never told us about the time frame those hours for those. Later tammy said he did mention it to her too and I saw she was looking rough like usually her hair looked better so I asked her how she was...Then Brad put in blackout days for PTO for April and May. He was just declining them and he wasn't saying why. He will decline them and then the officers will come to me and I tell them that brad wanted them to put it in two-three weeks early. A lot of these employees were getting very perturbed with me like I was denying them. Julia Taylor got 6 days straight approved and when they find out about those things they get upset because it looks unfair.

12. He said something like unauthorized, unexcused or something of that nature. He accused me of 32 hours being unaccounted for, I worked loss prevention at Macy's and I had to terminate people from that and that's how I felt he was going about. He never said how many hours we were supposed to be in there like today when I am by myself, I can't even get a solid break because I am getting calls and I can't even do proper reports. We have a lot of workload that is very repetitive, I do a lot of stuff that is CIP and we put things in folders so we can get back to it. Sometimes now I don't even know how much time I can stay in the office and I am rushing to get through things that sometimes I am missing thing and we have to get back to it. Then he was talking about being on the phones and I use my phone to transfer things sometimes it is out of storage and I have to switch it to the other phone. Sometimes Brian is in there watching the Dolphins game in there while he is working. It got to the point where tell them to turn it off when I get in there because I do not want to be

12.3

accuse of that...I got with crystal and told her we need to schedule time to do reports because it is to the point where she is paranoid when she needs to be in the office. Crystal is a little lazy and sometimes I need to do things for her too. I was trying to give him an example of my break where we have to do something in the middle of my break and I want to go back and finish the last 15 minutes of my interrupted break. The most hostile people we deal with, they call me to handle that and I go there for like a show of force. Sometimes I have something settled and crystal will come in and gaslight it so I want them to also respect the scene, you can come in but don't interject yourself into the scene and light it back up. We are coming up on august 8th so let's just breathe. I don't think Brad is a bad person...

13. I am a work person; I am focused on what the day is going to be like. If something comes up I will call. What I would like is an organized meeting with HR when Clinton come back. I don't think Clinton knew about our raises because he was one of the ones advocating for us and we got the raises but couldn't really tell him because we were told to keep quite about that. There has been something and I would really like to have a better working relationship with surveillance. They will hang up in our face. The older guy talks like a robot, and we didn't know if he actually talked like that or if he was messing with us until I talked to him in person. I tell the security people to not react if they (surveillance) snub us because it will probably end up being them getting the write up. Joann Ferguson is very sharp on the phone and I cannot stand her hanging up on the phone...Joann comes in and she doesn't even look at me and Crystal is sitting there and we are talking and she is just looking and talking to Crystal and ignoring me like I wasn't even there. She asked Crystal for machine numbers that I already had so I signed myself out and left. It is to the point that I save some of my reports to review for the next day, so I do not have to deal with Crystal...there is only so much we can do, I just want them not to gaslight things.

8/11/25, 1:20 PM
Case 0:25-cv-61631-AOV   Document 1   Entered on FLSD Docket 08/12/2025   Page 80 of 92
127,933 unread - daspromark@yahoo.com - Yahoo Mail

12.4



12.5



6:36  ···    78%

< Call history    🗑

MARCH 11, 2024

↗ Mar 11 8:45 PM
Outgoing call, 1 min 22 secs

↗ Mar 11 3:56 PM
Outgoing call, 1 min 9 secs

MARCH 4, 2024

↙ Mar 4 6:50 PM
Incoming call, 2 mins 46 sec

MARCH 2, 2024

↗ Mar 2 10:30 PM
Outgoing call, 0 mins 41 sec

FEBRUARY 19, 2024

↙ Feb 19 7:53 PM
Incoming call, 3 mins 32 sec

↗ Feb 19 7:16 PM
Outgoing call

↗ Feb 19 6:42 PM

127,933 unread - daspromark@yahoo.com - Yahoo Mail

12.4



1217

6:41   ▪ ▪ ▪ ···                          📶 78% 🔋

‹   **Tammy Casino ...**    📞  🔍  ⋮
    3059271420

That is so crazy, I just dont under-stand, I guess I'm losing it for real cause for the life of me, I can't re-member doing it. Now I won-der what's go-ing to happen is it a write up or something more anyw avs Thanks



        

1218

6:41   f f f   ···     78%

<   **Tammy Casino ...**   📞   🔍   ⋮
    3059271420

IS It a write up or something more anyw ays,Thanks for letting me know.

5:24 PM

You were doing your clean up thang, and it just happened... That's it...

5:25 PM

 Yea, I guess so.

5:26 PM

Saturday, April 13, 2024



         

12.9



13

**Darren Saunders**

| From: | Bradley Dunlap |
|---|---|
| Sent: | Friday, July 26, 2024 10:27 AM |
| To: | Security Mailbox |
| Cc: | Gavin Williams; Jane Cassidy |
| Subject: | Trash Dumpster |

Security Staff,

This email is to make clear the following:

NO employee of the security team is to ever enter the trash dumpster without approval from me, your director.  If I am not available, please reach out to Gavin Williams, surveillance director, or the executive office to explain the urgent situation.  A decision will then be made and relayed to you. **This directive to not enter the trash dumpster applies to ALL employees of the casino.** Reach out to me, and I will determine if it is justified.

The dumpster is not safe for anyone to be inside..  I appreciate that an effort was made to retrieve a key, but had I been notified I would have made the decision that the key did not warrant taking this risk.

**Again, no one is to ever go inside the trash dumpster without proper approval**



**Bradley Dunlap - Security Director**
831 North Federal Highway, Hallandale Beach, FL 33009
bdunlap@thebigeasycasino.com | 954-924-3171
TheBigEasyCasino.com

*Ӻ 13.1*

**From:** Darren Saunders <dsaunders@thebigeasycasino.com>
**Sent:** Saturday, July 20, 2024 5:26:20 PM
**To:** daspromark <daspromark@yahoo.com>; Darren Saunders <dsaunders@thebigeasycasino.com>
**Cc:** Robert Maidment <rmaidment@thebigeasycasino.com>; Antoine Wright <AWright@thebigeasycasino.com>
**Subject:** I will be working this schedule for Saturday 7/20/2024...

Good Afternoon,

I'm a Security Supervisor for the Big Easy Casino and security director Brad Dunlap is disrespecting me like I'm his property.   Brad Dunlap had that schedule created,  without my correct job title and it's an embarrassment to me and my staff.  You do not know my limitation and you didn't ask me anything, you just put me on a post for (8 hours) with no rotations, when other's have been treated better

Furthermore,  I'm making a formal harassment complaint to HR and "then if need be"  making a formal the EEOC complaint against you, because this is the same vindictiveness behavior you did to former Security Director Tammy McArthur, by making her go dig in the trash for that money room key or face the possibility of losing her job when, Ms. Tammy accidentally placed that money key in the trash.  If Ms. Jane Cassidy loss that same money room key you're going to make her dig in the trash for it as well?  So, I went in place of her and I injured my knee, due to your harassment.  Please show me in the employee handbook, for threating someone's job for accidently placing a key in the trash and having to retrieve it.

You accused me of time fraud on July 12, 2024, at approximately 18:30 on last Friday for stealing 32 hours(?) in the security office and you did not provide evidence or documentation.  Please provide me with **the "32" unaccounted hours** or minutes from your accusing me of time fraud a meeting with me without HR or any other witness.   You have created a very hostile environment, and you didn't designate anyone to do the schedules after two security manager's went on FMLA.  As security supervisor's, we're not the ones creating schedules we just follow through with the schedules.  You're not paying the security supervisor a management salary to be doing their jobs.  You're the cause of the overtime and security staff problems, by not having the work schedule designated or made available.  When I created the schedules, adjusting schedules, and doing incident reports,  you accused me of time fraud.   When I'm working the security staff by myself, there's an extra burden because I must run around and do
everything.  One I had four back-to-back incidents, so that's four incident reports, so when am I suppose the do the reports.  I can't even take  undisturbed lunch break working by myself and you accuse me of time fraud.  Well I was running those assignments,  which was another cause

I'm requesting a meeting with HR staff and with Ms. Jane Cassidy for how you're running this security department.  You're not even putting in the system bans of hostile guest we've lifetime trespassed with HBPD.  You never told Security manager Clinton Fogarty and Security Manager Brian Lewis about the raise's security supervisor's received last year, which is why they were speaking up for us meaning the security supervisors.



**Darren Saunders - Security Shift Supervisor**
831 North Federal Highway, Hallandale Beach, FL 33009
dsaunders@thebigeasycasino.com  |  954-924-3159
TheBigEasyCasino.com

2

rmaidment@thebigeasycasino.com | O 954-924-3262 | M 954-980-6855
TheBigEasyCasino.com

13·2

**From:** Darren Saunders <dsaunders@thebigeasycasino.com>
**Sent:** Monday, August 5, 2024 5:24 PM
**To:** Robert Maidment <rmaidment@thebigeasycasino.com>
**Cc:** Antoine Wright <AWright@thebigeasycasino.com>; Ana Soto <ASoto@thebigeasycasino.com>
**Subject:** Security Supervisor Darren Saunders


Good Afternoon to HR Staff,

   It is unlawful to retaliate against an associate after making a complaint, as I have made copies of my pay stubs and medical benefits papers before,  but I never asked what papers I was taking home from the office.   This is work place harassment as I'm not sure why I'm being monitored like this.

   On Saturday 8/3/2024 at approximately 20:12, while on worker's comp, I left early due to the fact I did too much walking on my bad knee.  I would inform both Security Supervisor Marc Arcelin and Security Supervisor Crystal Gardner of my leaving because we had enough staff and the medicine I took for pain, leaves me feeling too drowsy.   I still am working by myself while on worker's comp, with new trainees on Monday 8/5/2024, and not understanding  the inquiry when Security Supervisor Crystal Gardner leaves early from shift, (leaving me with work details), I'm not seeing anyone questioning her.

Also, I was asked to do job performance evaluations for five security officers by Security Director Brad Dunlap, I would print (5) word document copies, but then realized that the evaluation form were on a "word document" file, so instead of wasting the printed forms, I was going to fill out the job performance evaluation for each employee form by hand and then insert them into the word document applications, on my next opportunity at work.

It is unlawful to retaliate against an associate after making a complaint, as I have made copies of my pay stubs and medical benefits papers,  but was I never asked what papers I was taking home from the office.  Now I'm being monitor because I made a complaint because my two supervisors did not reported to their superiors about losing a money room key in a trash compactor.

I have not heard from the worker's comp agent for my MRI, with my next appointment with Fast Care on WED. 9am 8/7/2024, please update me on the status.  I would also like a copy of the statement I gave on last week Monday meeting with Ms. Jane Cassidy.  After I made my complaint, a new surveillance camera was put in the security shift office creating an even more hostile environment , due to the fact this is not a retail store with merchandise, and we must work in the security office.   I see it as more harassment and there's no new work schedule for the month of August 2024.  Now I'm being monitor because I made a request for therapy due a work related injury involving two of my  supervisors who did not report to their superiors about losing a money room key in a trash compactor.

This is not fair to me and will wait for the opportunity to have a meeting with the security management staff.



**Darren Saunders - Security Shift Supervisor**
831 North Federal Highway, Hallandale Beach, FL 33009
dsaunders@thebigeasycasino.com | 954-924-3159
TheBigEasyCasino.com



13,3

**RE: Security Supervisor Darren Saunders**

From Robert Maidment <rmaidment@thebigeasycasino.com>
Date Tue 8/6/2024 4:01 PM
To    Darren Saunders <dsaunders@thebigeasycasino.com>
Cc    Antoine Wright <AWright@thebigeasycasino.com>; Ana Soto <ASoto@thebigeasycasino.com>

Dear Darren,

Thank you for bringing your concerns to our attention. We understand the importance of addressing these matters promptly and thoroughly to ensure a fair and supportive work environment.

Firstly, regarding your injury and workers' compensation claim, we are actively following up with the workers' compensation adjuster to expedite the scheduling of your MRI. We recognize how crucial it is to manage your health and well-being effectively and will update you as soon as we have more information.

In response to your concern about being monitored, we want to clarify that the additional surveillance camera was installed to address the visibility issues within the office. This measure came about during the review of the amount of time team members were spending in the office and was necessary to enhance overall security and to better monitor activities, especially in areas with limited visibility, and is not intended to single out or harass any individual. This in line with our practice in other departments where there is monitoring of group offices via surveillance footage.

We have confirmed with management that Security Supervisor Crystal Gardner does notify her supervisors when she leaves early. This protocol is consistently followed by all supervisors to ensure transparency and proper reporting.

Regarding the August schedule, the remaining two weeks have been posted in the office as of this morning. We appreciate your patience and understanding as we work to keep all schedules up-to-date and accessible.

On the topic of taking work home, please be advised that completing performance reviews or any other work-related tasks should not be done on your personal time. It's important that all work be performed during your scheduled hours to ensure you are compensated for your efforts. If you have work that you are unable to complete within your shift, please discuss this with your supervisor so that appropriate arrangements can be made.

We understand your concerns about workplace harassment and retaliation. It is our policy to ensure a safe and respectful environment for all employees. We take these allegations seriously and will conduct a thorough review to address your complaints appropriately.

Thank you for your dedication and continued efforts. We are here to support you and are committed to resolving these issues fairly.

Best regards,



**Robert Maidment - Vice President of Human Resources**
831 North Federal Highway, Hallandale Beach, FL 33009

13,4

**Darren Saunders**

From:        Bradley Dunlap
Sent:        Wednesday, August 7, 2024 2:38 PM
To:          Security Mailbox
Subject:     Guideline for lifting heavy items, including guests
Attachments: How to Lift Heavy Objects Safely.docx

Attached is a guideline for lifting heavy items to also include lifting guests. Please look over and familiarize yourselves with this guideline. If you have any questions please let me know.



**Bradley Dunlap - Security Director**
831 North Federal Highway, Hallandale Beach, FL 33009
bdunlap@thebigeasycasino.com | 954-924-3171
TheBigEasyCasino.com

WHEN I REPORTED
BACK INJURY IN
THE Q.A. INVESTIGATION
MY THEN SECURITY
DIRECTOR RESPONDED
WITH THIS EMAIL.

1

13.5

How to Lift Heavy Objects Safely also to include lifting guests.

Before you can safely lift heavy things, there are four stages to consider:

- Preparation
- Lifting
- Carrying
- Setting Down

Before You Lift Heavy Things

Preparation and planning are critical aspects of ergonomic lifting.

First, you need to evaluate the lifting task for safety. Know how much you can safely lift and ensure the load doesn't exceed it. Assess whether the object is too large or awkward to lift and carry safely. Will you be able to get a good grip?

You need to know where you're putting the object ahead of time. Ensure the path is unobstructed, the floor is dry, and the distance isn't too great for safety.

If the load is too heavy or ungainly, will obstruct your vision, and needs to be carried too far or lifted overhead, you'll need to find a safe alternative. Is it a two-person job? Do you need a hand truck, dolly, pushcart, or another tool? Could gloves give you a better grip?

Once you have a plan for lifting ergonomics, you should stretch and warm up your muscles before lifting. Loosen up your back with lower-back rotations. Stretch your hamstrings and get the blood flowing – these measures will reduce your risk of injury.

Proper Lifting Techniques

You've probably heard, "lift with your knees, not with your back." But what does it mean?

It means you should never bend forward to lift a heavy object. Instead, you should squat, secure the load, and stand by straightening your legs while keeping your back straight or slightly arched.

Safe lifting involves:

- Standing as close to the load as possible
- Planting your feet shoulder-width apart with one foot slightly ahead of the other
- Bending at the hips and knees only until you're deep in a squatting position
- Keeping your head up and straight with your shoulders back to keep your back straight
- Holding the load close to your body at waist height
- Engaging your core muscles as you push against the ground and straighten your legs

Here are a few essential don'ts to keep in mind for good lifting ergonomics:

- Never twist your torso while lifting. Stay "nose between your toes."

13:6

- Never lift a heavy item above shoulder level.
- Never carry a load that obstructs your vision.
- Never hold your breath while lifting, moving, and setting the load down.

Carrying Heavy Things Safely

As you carry the load to its destination, you want to maintain good ergonomics. That means:

- Holding the load as close to your body as possible, level with your belly button
- Keeping your shoulders in line with your hips as you move – don't twist your trunk
- Changing direction with your feet and leading with your hips
- Taking small steps and keeping a good grip with all your fingers

Setting Down Heavy Things Safely

Setting down a heavy object is just as dangerous as picking it up. You'll want to reverse the lifting process, following the same ergonomic lifting principles:

- Keep the load close to your body and your back straight or slightly arched
- Squat down, bending only at the knees and hips
- Tighten your stomach muscles (engage your core) as you lower yourself
- Kneel on one knee if necessary

Remember not to rush the lifting process and to carry a heavy load. Also, keep in mind that the most dangerous lifting tasks are repetitive and for sustained periods. You need to monitor your exertion level and take breaks. Stop before you become too tired to lift safely.